W. J. RICKEL et al., Appellants,

v.

J. D. MANNING, Appellee.

No. 4148.

Court of Civil Appeals of Texas.

Waco.

June 20, 1963.

Rehearing Denied July 18, 1963.

Andrew Campbell, John F. O'Neal, Hamilton, for appellants.

H. A. Leaverton, Hamilton, for appellee.

WILSON, Justice.

Adverse possession is the principal issue in this trespass to try title case, in which judgment non obstante veredicto was rendered for defendant-appellee.

Plaintiffs contend that the court erred in sustaining defendant's motion to disregard the jury finding that plaintiffs and their predecessors in title held continuous adverse possession of the land in controversy for ten years or longer from 1909 to May 7, 1962. In determining the question we follow the test summarized in Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199.

Defendant holds the record title to the Beatty Survey 20-acre tract in controversy, which was conveyed to him with two larger surveys, adjacent to the east, known as the Bowman land. Plaintiffs have no deed or other memorandum of title to the 20-acre tract.

This 20 acres juts westward into lands surrounding it on three sides owned by plaintiffs, who also own a tract of similar shape and size constituting the western residue of the elongated Beatty Survey. A mountain bisects the Beatty Survey, its brow separating the eastern 20 acres in question conveyed to defendant from the western residue owned by plaintiffs. The perimeter of plaintiffs' lands north, south and west of the 20-acre disputed tract has been fenced for over 50 years, but this 20 acres has never been fenced (viewing the evidence as plaintiffs say favors them) except on its east end. This diagonal fence on the east end of the disputed tract is a part of the western boundary fence of defendant's Bowman land, separating the latter from plaintiffs' lands which lie north and south of the 20-acre tract in controversy. It was erected over 40 years ago by defendant's predecessor in title. Over 50 years ago claimants' ancestor erected a fence from the mountain eastward, "tying on" to the Bowman fence, but this fence was located south of the Beatty Survey line, and was for the purpose of enclosing the larger Chew Survey south of the Beatty. The north and west fences of plaintiffs' lands were built by unknown persons before memory of witnesses. The record makes it undisputed that none of the fences on plaintiffs' lands were designedly erected to enclose the 20 acres in controversy, although it is within the fenced perimeter of over 750 acres owned by them.

The 20 acres in controversy constitutes the eastern slope of the mountain. It is

rough, mountainous terrain covered with thick brush, shinnery, timber and rocks. It contains no water supply and is not tillable. Such use as it was adapted to appears to have been goat grazing and timber supply.

Plaintiffs' evidence to show a limitation title matured by adverse possession, when considered most favorably in support of the verdict, comes squarely within rules relating to fencing and grazing stated in Orsborn v. Deep Rock Oil Co., 153 Tex. 281, 267 S.W.2d 781 which would preclude recovery. We do not predicate decision entirely on that case, however.

Relative position of tracts — not to scale.

We have made a chronological analysis of the evidence which can be martialed to support plaintiffs' claim. There is clearly no evidence of continuous, exclusive and adverse possession or use by plaintiffs' predecessor in title from 1909 to 1937. During that period plaintiffs' lands in the Chew Survey south of the Beatty were fenced off from the disputed tract. His wife's mother, Mrs. Brooking, then owned and operated the lands north and west of the 20 acres as a separate unit, known as the Brooking land. There is evidence that livestock was intermittently pastured on her land for short periods until she died in 1937, and that some of these animals may have entered the disputed tract, but an analysis shows no continuity of use for periods of more than three years, and these broken by longer intervals. From 1936 to 1938 Mrs. Brooking's tenant tended sheep, two horses and a cow and ran this livestock "over the entire Brooking land enclosed in a fence, down to the Rickel property." An occupant of the Bowman property from 1936 to 1941 saw cows on the Brooking property, but not "every year from 1936." He recalled some stock on the Brooking property "about 1939". In 1944 or 1945 a Rickel tenant "ran livestock over that entire pas-

ture; in the Brooking pasture, on both sides of the mountain."

The only other evidence on the issue, as to use after 1937, was that of plaintiff: "Q. Now I'll ask you to state whether or not you know of your own knowledge that you, for the period of time you have been using it, have run livestock freely across that, or let them graze there, if you wanted to? A. Yes sir, ever since we heired it before my wife died"; and "Q. I'll ask you to state to the jury whether or not you, yourself, know of your own knowledge that you personally had livestock over all of the Brooking place, using it generally for raising livestock, including this tract of land in dispute? A. Yes sir. Q. From around 1937 until the present date? A. That's right." No witness testified to ever seeing domestic animals on the tract in question, although there was no fence to prevent their entry from the Brooking land, and any claim of continuous adverse use must rest on the evidence last quoted.

The evidence is undisputed that from 1926 to 1943 defendant's antecedents in title entered various portions of the tract in controversy, cut a wood road for hauling timber, and cut and removed wood two to three times each year without protest by appellants. In 1948, and again in 1952, previous owners of defendant's lands cut timber and brush for survey lines and had the disputed tract surveyed with the knowledge or assistance of plaintiff, Rickel, and without protest or objection from him. In 1953 defendant's predecessor bulldozed the eastern portion of the 20-acre tract and knocked brush off of it, preparatory to seeding it with grass and erecting a fence. Because of lack of labor this fence was not constructed. Plaintiffs' petition was filed May 7, 1962, after defendant began preparation for fencing.

■ Plaintiff Rickel had attempted to purchase the disputed tract from previous owners, or to trade his land for it. He testified that after May 12, 1952, another former owner of defendant's land began clearing a fence right-of-way and notified him he was "going to fence" the disputed tract. "I knew that was just going to ruin me if I couldn't get back there, and I asked him in case he did, if I could have some gates through there. Q. You asked him not to cut you off, is that correct? A. That's it." Rickel was told he would be permitted to construct gates in the proposed fence if he would agree to keep them up. This former owner testified that he then declined Rickel's offer to trade him one acre of pasture land for each five acres of the 20-acre tract, and that previously Rickel had told him he did not claim any interest in the disputed tract. Rickel denied making the latter statement. The jury found, in answer to Issue IV, that Rickel told this former owner he "did not claim any interest in the land in suit"; but also found in answer to Issue V that the former owner did not believe and rely on such statement. The finding in answer to Issue IV was not set aside, and is not here under attack. Although there is evidence they acted under a claim of right, we find no evidence that appellants ever actually or directly communicated such claim to the record owners.

■ The evidence, viewed by the appropriate rules, negatives existence of the requisite element of exclusiveness in appellants' possession for any continuous statutory period. Rick v. Grubbs, 147 Tex. 267, 215 S.W.2d 925, 927; Evans v. Houston Oil Co., Tex.Com.App., 231 S.W. 731, 733; Word v. Drouthett, 44 Tex. 365, 369; South Texas Development Co. v. Manning, Tex. Civ.App., 177 S.W. 998, 999–1000, writ refused; 2 Tex.Jur.2d p. 142; and see Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912, 913; Houston Oil Co. of Texas v. Moss, 155 Tex. 157, 284 S.W.2d 131, 133; Black v. Goolsbee, Tex.Civ.App., 226 S.W. 463, writ dis.

■ The appeal involves an alternative claim to an easement by prescription across the disputed tract. There is adequate evidence to show a roadway existed

for the required period adjacent to the Bowman land west fence, and that appellants used it during such time. The jury found plaintiffs used the passageway for more than 10 years and that their use was adverse to defendant and his predecessors. The evidence establishes without dispute, however, that it was jointly used permissibly by them, other members of the public, and by the record owners during the same periods. There is no evidence to show a right, or claim of right, to use of the way to the exclusion of the right of appellee or his predecessors in title. The court disregarded the findings, rendering judgment for defendant. In the case of private easements, the use is permissive and not adverse, as a matter of law, if the way is also used by the owner contemporaneously with such use by the adverse claimant. O'Connor v. Gregg, 161 Tex. 273, 339 S.W.2d 878; Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622; and see note, Rust v. Engledow, Tex.Civ. App., Waco, 368 S.W.2d 635.

In our opinion the trial court correctly rendered judgment for appellee, notwithstanding the jury findings. Affirmed.