John S. CARROLL, Jr., Appellant,

v.

Lynn BROWN et al., Appellees.

No. 545.

Court of Civil Appeals of Texas, Tyler.

Oct. 21, 1971.

Rehearing Denied Nov. 18, 1971.

B. R. Hardgrave, Palestine, Renfrow, Zeleskey, Cornelius, Rogers & Berry, James S. Roper, Lufkin, for appellant.

James N. Parsons, III, Palestine, for appellees.

MOORE, Justice.

This is an action in trespass to try title to a 7 acre tract of land situated in Anderson County. Plaintiffs, Lynn Brown, Alifornia Dawson, Cal Dawson, Charlie Brown and Mary Ellen Coleman, are the heirs of Irvin Brown, deceased. Their claim of title to the 7 acre tract rests on the ten year statute of limitations. Article 5510, Vernon's Annotated Texas Civil Statutes. Defendant, John S. Carroll, Jr., answered with a plea of not guilty. It was stipulated that defendant, John S. Carroll, Jr., was the owner of record title.

Trial was had before a jury. In response to Special Issue No. 1, the jury found that plaintiff, Lynn Brown, and the Brown heirs, "or those under whom they claim, held exclusive, continuous, peaceable and adverse possession of 7 acres more or less, in controversy in this suit, under an enclosure, cultivating, using or enjoying the same for a period of ten consecutive years or longer, prior to January 29, 1970." The trial court rendered judgment on the verdict. After his amended motion for new trial was overruled, defendant, John S. Carroll, Jr., duly perfected this appeal. The parties will hereinafter be referred to as appellant and appellees.

Appellant, John S. Carroll, Jr., has brought forward ten points of error seeking a reversal of the judgment. By points 1, 2, 3, 5, 7 and 9, he asserts that the judgment must be reversed because there is no evidence to support the submission of adverse possession and there is no evidence to support the jury's finding thereon. By points 4, 6, 8 and 10, appellant asserts that the jury's finding of adverse possession is contrary to the overwhelming weight and preponderance of the evidence. We sustain the "no evidence" points and overrule the remaining points, and in so doing, reverse and render judgment in favor of appellant.

Article 5510, supra, reads, in part, as follows:

"Any person who has the right of action for the recovery of lands, tenements

or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. * * * "

" 'Adverse possession' (as defined by our statutes) is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Article 5515, Vernon's Annotated Texas Statutes.

The record discloses that in 1897, Irvin Brown, grandfather of appellees, acquired an 80 acre tract of land adjacent to the land in controversy. The 80 acre tract was in the form of a triangle. The 7 acre tract in controversy is a long narrow strip of land 150 feet in width on the northwest end and 300 feet in width on the southeast end, approximately 1400 feet in length, lying adjacent to the 80 acre tract on the northeast side thereof commencing at the east apex of the 80 acre triangular tract and extending in a northly direction approximately 1400 feet along the common boundary line. Appellant, Carroll, together with other members of his family, owns a large tract of land adjoining the east end of the 7 acre strip.

Appellees' proof consisted of the testimony of five witnesses. Three of the witnesses, Alifornia Dawson, Lynn Brown and Calvin Dawson were plaintiffs and grandsons of Irvin Brown. The other two witnesses, Calvin Brown and Clark Wilson are not parties and assert no claim to the land.

The record leaves much to be desired. The testimony of appellees' witnesses was apparently elicited with reference to certain maps or plats. The maps and plats, however, were not offered into evidence, and as a result we have experienced great difficulty interpreting the witnesses' testimony, especially as it relates to the location of the boundary lines of the tract in dispute. In substance each of appellees' witnesses testified that they never knew of a separate 7 acre tract in question; that all the land owned by Irvin Brown, including the 7 acres in question, was under one fence; that the fence ran across the north and east side of the land in dispute; and that there was no fence separating the two tracts. It is apparent from their testimony that appellees claim that the entire 7 acre tract was enclosed by the Irvin Brown fence and that they are claiming coextensively with the fence lines. The fence was sometimes referred to as an "old sham" fence. While the witnesses testified that there was a fence on the north and east side of the 7 acre tract, we fail to find any testimony with reference to a fence and the northwest end thereof. No map or plat showing the location of the fence on the ground was offered in evidence, and as a result there appears to be no evidence as to where the fence was situated on the ground. Although the record shows appellees employed a surveyor to survey the 7 acre tract, the surveyor was not called as a witness. From the record, about all we know is there was a fence somewhere on the north and east side. No evidence was offered showing that the fence followed the metes and bounds description of the 7 acres described in appellees' petition and carried forward in the judgment.

The record shows that Irvin Brown, appellees' grandfather, acquired the 80 acre tract of land on January 6, 1897. It is undisputed that his deed did not describe the 7 acre strip. There is no evidence as to when Irvin Brown took possession. The only evidence with reference to his possession came from the witnesses Calvin Brown and Clark Wilson. Calvin Brown testified that he was born in 1900 approximately three years after Irvin Brown acquired the 80 acre tract. He testified that Irvin cultivated some small patches somewhere on the 7 acres in dispute. Clark Wilson testified that he was born in 1890, being seven years of age when Irvin acquired the land. He testified that Irvin

Brown raised some hay, cane and sweet potatoes on the 7 acre tract and that he remembered an old "sham" fence on the east thereof. He further testified that Irvin Brown farmed a portion of the disputed strip for ten or twelve years. He was not asked, nor did he testify, when the farming commenced and ended or whether it was continuous for any period of time. We fail to find anything in the testimony of these two witnesses showing that Irvin Brown's possession was continuous for any period of ten years or more. The record does not show when Irvin Brown died. We gather, however, that he must have died sometime prior to 1914. As to what use was made of the 7 acre strip between the time of his death and 1914, the record is by no means clear.

Appellee, Alifornia Dawson, testified that he was born in 1911 and that he and his parents moved on the 80 acre tract in 1914. There were three houses on the 80 acre tract. He testified that his mother was a daughter of Irvin Brown; that they moved into his grandfather's house; and that his Uncle Lynn Brown, father of appellee, Lynn Brown, and his Uncle Augusta Brown occupied the other two houses. Alifornia testified that the first time he remembered using and cultivating the land was in 1914. He testified that his Uncle Lynn Brown had a hog pen on the 7 acre tract; that they had a cane patch and a potato patch on the land and they used it like that from about 1917 to 1928; that Lynn Brown, Vester Brown and the other Brown heirs continued to farm the land and run cattle thereon until the 7 acre strip was fenced by a Mr. McMahan. The record shows that Mr. McMahan fenced practically all of the 7 acre strip in 1963, after being authorized to do so by appellant's predecessor in title and used it as a pasture until the time appellant purchased the land.

Appellee, Lynn Brown, testified that he was born in one of the houses on the Irvin Brown farm in 1914; that he remembered when he was four years of age his father had a hog pen on the disputed tract and he carried feed to his father's hogs until he was about 17; that he had farmed the disputed land since he was four years of age; and that he and the other Brown heirs had continued to farm the land and run cattle thereon until Mr. McMahan placed a fence around it.

With reference to the 7 acre tract, the records show that in 1917 J. S. Carroll, father of appellant, and M. C. Dyer, together with several other land owners in the community, formed an association known as a "levee district." The association was formed for the purpose of constructing a levee to prevent the overflow of their lands as well as approximately 2,000 acres of land now owned by the Texas Prison System. It was determined that it would be necessary to construct a drainage ditch to prevent water from collecting and flowing over the levee. The location of the drainage ditch called for it to commence somewhere east of the 7 acre strip and extend in a westerly direction going through the center of the 7 acre strip lengthwise and thence in a southerly direction across the Irvin Brown 80 acre tract, a distance of approximately 2½ miles. Easements for the ditch were acquired except for the place where it went through the 7 acres in dispute. At that time the 7 acre strip constituted the southeast corner of a larger tract owned by Ben Jackson. Jackson refused to grant the association an easement. Consequently, M. C. Dyer, one of the members of the association, purchased the 7 acre strip from Jackson and gave the association permission to build the ditch through it. The drainage ditch was constructed in 1917.

Appellees do not deny that they and those under whom they claim had knowledge of the construction of the ditch. In fact, their witness, Cal Brown, testified that Ben Dawson, father of appellee, Alifornia Dawson, had the contract to clear the right-of-way for the ditch and that he worked for Dawson helping clear about one acre of the 7 acre tract. They admit that after the ditch was constructed the

Brown heirs built a bridge across it. There is nothing in the record to suggest that appellees or any of the Brown heirs ever objected to the construction of the ditch. The record shows that the ditch has been in existence since 1917 and has been used continuously since that time for the purpose for which it was constructed. Cal Dawson, one of the appellees, testified that without the drainage ditch, all of the farm lands in the area would overflow and become useless. There is no evidence that any of the Brown heirs ever attempted to close the ditch or made any use thereof that would be calculated to interfere with the drainage of the water. While the evidence shows that appellees have farmed patches, there is nothing in the record showing that they used the ditch for that purpose. In summary, the record conclusively shows that appellees and those under whom they claim have recognized the existence of the ditch and acquiesed in the use being made thereof by the record owners ever since it was constructed. According to testimony offered by appellant, the members of the levee district always kept the ditch cleaned out and free of logs and other debris. There is testimony showing that the ditch was cleaned out by use of a dragline in 1936 and again in 1942. Appellees do not deny this, but denied that they ever saw anyone clean it out.

The record discloses that M. C. Dyer conveyed the 7 acre strip to J. S. Carroll, father of appellant, in 1931, and appellant acquired title from the other Carroll heirs in 1969. As stated, it is stipulated that appellant, John S. Carroll, Jr., holds record title.

Appellees argue that the judgment must be sustained because there is evidence showing that their grandfather, Irvin Brown, held adverse possession for ten or more consecutive years after he acquired the land in 1897. They also argue that by "tacking" the adverse claim of their ancestors, the evidence is sufficient to show that they and those under whom they claim held the land adversely for more than ten

years. Appellant takes the position that the proof conclusively shows that he and his predecessors in title have continuously used the 7 acre tract for a drainage ditch since 1917. Any finding of adverse possession of ten years subsequent to that time is without support in the evidence because the evidence conclusively shows a joint use, and consequently appellees' possession was not exclusive. As to the period prior to 1917, appellant takes the position that any finding of adverse possession during this time is without support in the evidence because there is no evidence showing the possession was for any period of ten consecutive years.

Since the jury found adverse possession in favor of appellees, it is our duty to view the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences which are contrary to the finding. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Butler v. Hanson, 455 S.W.2d 942 (Tex.Sup., 1970), and citing cases.

■ It is the settled law of this State that an adverse claimant of land must prove that his possession was of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. It follows that the law's requisites are not satisfied if the occupancy is shared with the owner or his agents or tenants. Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925. In the foregoing case the Supreme Court says that the rule is aptly stated in Wichita Valley Ry. Co. v. Somerville, 179 S.W. 671 (Tex.Civ.App., Amarillo, 1915), as follows:

"'The law presumes the true owner is in possession until adverse possession is proved to begin, and when two persons are in mixed possession of the same land, one by title, and the other by wrong, the law considers the one who has title as in possession to the extent of his rights, so as to preclude the other from taking advantage of the statute of

limitation. 2 Corpus Juris, Adverse Possession, § 587, p. 264; Satterwhite v. Rosser, 61 Tex. 166. * * *'"

In 2 C.J.S. Adverse Possession § 48, p. 566, the rule is stated thusly:

"To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law refers the possession to the person having the legal title. * * *"

See also 2 Tex.Jur.2d, sec. 68; Black v. Goolsbee, 226 S.W. 463 (Tex.Civ.App., Beaumont, 1920, writ dism.); Wicks v. Langford, 320 S.W.2d 707 (Tex.Civ.App., Eastland, 1959, n. w. h.); Solis v. LaBrisa Land and Cattle Co., 361 S.W.2d 631 (Tex. Civ.App., San Antonio, 1962, n. w. h.); Burnett v. Knight, infra; Missouri Pacific Railroad Company v. Martinez, 353 S.W.2d 233 (Tex.Civ.App., San Antonio, 1961, n. w. h.); Rickel v. Manning, 369 S. W.2d 655 (Tex.Civ.App., Waco, 1963, err. ref., n. r. e.).

As we view the record, the evidence falls far short of showing adverse and exclusive possession at any time subsequent to the construction of the drainage ditch in 1917. While the evidence shows, and appellant admits, that appellees were in possession of parts of the 7 acre strip at various times after the drainage ditch was constructed, we are of the opinion that the evidence likewise shows that the appellant and those under whom he claims, was in possession of that part of the land being used as drainage ditch. This situation does not involve the natural drainage of water. The undisputed evidence is that the ditch was man made and was cut below the surface of the land. According to the testimony of appellee, Cal Dawson, the drain-

age ditch changed the natural flow of water in the area. When considered in the light of the land's character and location, we think the evidence conclusively shows that appellant and those under whom he claims, actually possessed and made use of the strip for the purpose of draining water and have done so continuously, ever since the ditch was constructed. Appellees had knowledge of these facts and never did anything to interfere with the use being made of the land by the record title holders. Appellees argue that the evidence shows only that the Levee District used the land and that therefore appellant was not in possession. This argument, we think, is untenable. Appellant and those under whom he claims were members of the association known as the "levee district." As such, they gave other members the right to use the land. Thus, it appears that appellant and his predecessor in title used the land both individually and as members of the levee district. At any rate, the fact that record owners permitted other members of the district to use the strip would be sufficient to show possession through licensees or tenants at sufferance. In this connection, it is significant to note that appellee, Cal Dawson, testified that the Brown heirs benefited from the use of the drainage ditch just as much as appellant and others in the area. As we construe his testimony, he is saying the levee and drainage ditch actually protects appellees' land. This testimony, as well as that of appellant, we think, constitutes an admission that there was a joint use of the drainage ditch. At most, we think the evidence showed a claim by appellees to a right to use the land jointly with the record owners subsequent to the construction of the drainage ditch in 1917.

With respect to appellees' adverse claim prior to 1917, we fail to find anything in the record to indicate that the possession of the strip by the appellees or those under whom they claim was continuous and unbroken for ten years or for any other definite period of time. The only evidence in

this respect was that Irvin Brown cultivated the land for ten or twelve years. There is no evidence that the cultivation was continuous or that it extended over a period of ten consecutive years. There is no evidence as to when his use commenced or ceased. There is no evidence as to when he died. About the only thing we can gain from the record is that some of his children were in possession in 1914. There is nothing, however, showing continuity of possession thereby making the doctrine of "tacking" applicable. Consequently, as we view the record, there is no evidence showing continuous cultivation, use or enjoyment by appellees or those under whom they claim for any period of ten consecutive years prior to 1917.

In making proof the ten year statute of limitations, it is incumbent on the claimant to show affirmatively (1) peaceable possession of the land, (2) cultivation, use or enjoyment thereof, (3) an adverse or hostile claim, and (4) an exclusive dominion over the land for the statutory period. 2 Tex. Jur.2d, sec. 222, Adverse Possession.

 "Peaceable possession" is defined by statute to be such possession as is continuous and not interrupted by adverse suit to recover the land. Both continuity of possession and uninterruption of possession are required by the statute. Article 5514, Vernon's Annotated Texas Statutes. Thus, one of the essential facts necessary in the proof of adverse possession is that the possession of the claimant must be continuous for a period of ten consecutive years. Hardy v. Bumpstead, 41 S.W.2d 226, 76 A.L.R. 1488 (Tex.Comm.App., 1931, judg. adopted); Burnett v. Knight, 428 S.W.2d 470 (Tex.Civ.App., Dallas, 1968, writ ref., n. r. e.). In order to establish a limitations title prior to 1917, appellees had the burden of showing affirmatively the facts from which continuous use and occupancy may be affirmatively adduced. Cook v. Winter, 207 S.W.2d 145 (Tex.Civ.App., Amarillo, 1947, writ ref., n. r. e.). The testimony that Irvin Brown farmed the land for ten or twelve years, standing alone, does not show facts from which it can be affirmatively adduced that such use was continuous. There being no evidence as to when Irvin Brown died and no evidence as to when his heirs took possession after his death, other than the fact that they were in possession in 1914, leads us to conclude that the evidence does not affirmatively prove continuous cultivation, use or enjoyment of the land clearly and satisfactorily enough to raise the issue of adverse possession under the law.

For the reasons stated, we are of the opinion that the trial court erred in entering judgment upon the verdict. Accordingly, the judgment is reversed and judgment hereby rendered that appellees take nothing by their suit and that appellant recover all costs in this behalf expended.

Reversed and rendered.