## LOUISIANA PACIFIC CORPORATION,
### Appellant,

v.

### Jim Paul HOLMES, Appellee.

No. 04–01–00699–CV.

Court of Appeals of Texas, San Antonio.

Dec. 18, 2002.

Jeff "Marty" Barnhill, Scott Skelton, Robert T. Cain, Jr., Zeleskey, Cornelius, Hallmark, Roper & Hicks, L.L.P., Lufkin, for appellant.

Lindsey B. Whisenhant, Woodville, for appellee.

Sitting: ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice, concurs in judgment only, KAREN ANGELINI, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

This is an adverse possession case. Louisiana Pacific Corporation ("LPC") appeals the trial court's final judgment entered on a jury verdict. The jury found for Jim Paul Holmes on his claim for adverse possession of two tracts of land based on the ten-year and twenty-five-year limitations periods under sections 16.026 and 16.027 of the Texas Civil Practice and Remedies Code. LPC contends that Holmes presented no evidence in support of his claims for adverse possession. A review of the evidence supports LPC. Therefore, we reverse the judgment of the trial court and render judgment in favor of LPC.

## BACKGROUND

Holmes is the sole owner of a twelve-acre tract of land on the Holland Survey in Hardin County, Texas. Holmes's property is surrounded by property owned by LPC. LPC's predecessor in title was Kirby Lumber Company. By his first amended petition, Holmes claimed ownership by adverse possession of approximately 198 acres. He also claimed damages for timber that was removed from the land by LPC. The acreage in question is based out of the following surveys: (1) D.F. Singleton Survey; (2) Williams O. Flowers Survey; (3) Louis L. Nordman Survey and (4) R.R. Holland Survey. Holmes' property sits in the Holland Survey and is surrounded by the other surveys on three sides. Holmes purchased his property in 1992 from relatives of the Holland family.

Under the Holland Survey, Holmes's property is described as 36.1 acres. The

evidence at trial reflects that in 1890, R.R. Holland began making various applications to the State of Texas for a patent deed to the land in question. The State of Texas granted Holland a patent deed to the land in 1930. The patent deed described the land as 36.1 acres based on the Holland Survey. The parties do not dispute that the Holland Survey was preceded by the Nordman Survey upon which LPC bases its property interest. Holmes claims land that is essentially around his current 12 acres and marked by an old fence line. At trial, Holmes admitted that LPC holds the deed to the property which he now claims by adverse possession, including the conflict property along the Nordman and Holland surveys.[1]

At trial, Holmes testified that he had been using the property since he was eight or nine years old. His father was related to the Holland family. Holmes testified that he started asserting his claim in 1957 when his father told him the land was government land and that "if he took care of it [sic] would be his one day." The evidence reflects that at that time the property was being leased by Holmes's uncle, J.F. Holmes, from Kirby for grazing purposes. Over the course of the years Holmes's activities on the property included maintaining fences, keeping horses, planting gardens and recreation, such as hunting and riding horses. Holmes testified that he has been "adamant," "hostile," and "notorious" about his claim since 1969 when his uncle gave up the grazing lease. He also testified that "in his mind" he was very clear to LPC that he has been claiming this land since 1969.

The evidence also reflects that over the years Kirby and LPC would lease the property to various hunting clubs. In 1968, LPC leased the four tracts to the Village Mills Hunting Club. Holmes was a member of the club from 1969 to 1993 and held office. As an officer of the club, Holmes approached Kirby regarding the club's complaints of trespassers. He also asked for a reduction of the hunting club's lease payments based upon LPC's continued harvesting of timber on the property. In 1993, LPC leased the four tracts to Pavey Field Hunting Club. Holmes was president of the club and signed the hunting lease in that capacity. LPC did not renew the lease after having problems with Holmes and the hunting club regarding LPC's logging activities. In 1997, LPC leased out the four tracts to the Dorman Hunting Club. Holmes filed suit in 1998.

The evidence at trial included the testimony of A.J. Holmes, a cousin. A.J.'s father had the grazing lease with Kirby. He testified that Holmes had been claiming the land since 1959. He also recalled that Holmes had planted timber and gardens, and maintained the fence line. Curtis Holmes, Holmes's son, testified that he recalled the first building on the property in 1969. He testified that his father ran horses in the fenced areas. He also testified that his father had been claiming the land since he was a child and that such claim was communicated to LPC.

After trial, the jury found that Holmes had met the ten-year and twenty-five year statute of limitations for purposes of his adverse possession claim. Specifically, the jury found that Holmes met his claim for two tracts of land in dispute. The first tract was a 10.92 acre tract in the Singleton Survey and a 23.66 acre tract in the Holland Survey which conflicted with the Nordman Survey. The jury also awarded Holmes damages in the amount of $16,000

---

1. We note that in oral argument counsel for Holmes contended that Holmes disputed LPC's status as legal title holder to the property.

for timber harvested by LPC on those tracts. A final judgment was entered on September 18, 2001 by the trial court pursuant to the jury's findings and awarded Holmes record title to the two tracts and damages in the amount of $20,322.19. LPC filed a motion for judgment notwithstanding the verdict. The trial court subsequently denied the motion. Holmes, in turn, filed a motion for new trial asserting the evidence supported a higher value for the harvested timber. That motion was overruled by operation of law. LPC subsequently appealed.

## STANDARD OF REVIEW

■ If a party is attacking the legal sufficiency of an adverse finding of an issue on which it did not have the burden of proof, the attacking party must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In reviewing a no evidence issue, we must consider all of the record evidence in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998).

LPC first argues that there was no evidence of exclusive possession and, therefore, Holmes's adverse possession claim must fail. As a related argument, LPC contends that Holmes's claim is barred by evidence of joint tenancy. We agree with LPC. Because there is no evidence to establish exclusive use, Holmes's adverse possession claim must fail. Therefore, we need not reach LPC's other issues.

## ADVERSE POSSESSION

■ Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 2002); *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex.1990); *Clements v. Corbin*, 891 S.W.2d 276, 278 (Tex.App.-Corpus Christi 1994, writ denied). Under the ten-year limitations statute, a claimant must hold the real property in adverse possession continuously for ten years or more. *Id.* at § 16.026(a) (Vernon 2002); *Trevino v. Trevino*, 64 S.W.3d 166, 171 (Tex.App.-San Antonio 2001, no pet.). Under the twenty-five year limitations statute, a claimant must hold the real property in peaceable and adverse possession for twenty-five years. *Id.* at § 16.027 (Vernon 2002). To establish title through adverse possession, "the possession must be of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Clements*, 891 S.W.2d at 278.

■ It is well-established that the possession by the limitation claimant must wholly exclude the record owner. *Davis v. Carriker*, 536 S.W.2d 246, 250–51 (Tex.Civ.App.-Amarillo 1976, writ ref'd n.r.e.). Possession, in order to be adverse, must be exclusive of the true owner. *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (Tex.1948); *Riddle v. Vandiver*, 225 S.W.2d 460, 462 (Tex.Civ.App.-Texarkana 1949, no writ). The exclusiveness of the claimant's possession is ordinarily a fact issue to be determined by a court or a jury. *Templeton v. Dreiss*, 961 S.W.2d 645, 670 (Tex.App.-San Antonio 1998, writ denied). In determining whether possession of the claimed land was exclusive, all evidence must be considered. *Id.*

■ Holmes has the burden of proving, without the benefit of any inferences, his adverse possession claim under both limitations periods. *Davis*, 536 S.W.2d at

251. In general, Holmes relies on his statements that he has claimed the land in question since 1969. He relies upon the various activities he engaged in over the years, such as maintaining an old fence line, keeping horses, planting gardens and using the land for recreation, such as hunting and riding horses. Holmes testified that he represented to a Kirby employee that he has been claiming the property since 1969. He also attempted to stop LPC's activities on the property and he told LPC it was his land. He also admitted to firing shots at LPC employees to stop logging activities. Finally, Holmes testified that he excluded individuals from coming onto the property and "put people off that didn't have any right to be there."

At best, this evidence supports Holmes's use of the land, but not exclusive use. Holmes's attempts to stop LPC from activities occurred in 1992. Additionally, the evidence reflects that the "shooting incident" between him and LPC occurred in 1997. Holmes offers no other evidence as to how he excluded LPC. Therefore, the only evidence on which he can rely on is his singular statement that he told a Kirby employee the property was his and the extent of his use of the property.

Holmes maintained an old fence line that appeared to be built in the 1920's. Portions of the fence line were built by Holmes's uncle for his grazing lease. Holmes also housed horses on the property. However, the evidence does not reflect whether these horses were kept on the property he now claims as distinguished from the twelve-acre tract he owns. While there is evidence that Holmes planted timber, the evidence does not specify when and how often this occurred. Holmes also testified that he lived on the property for four years. Again, he

never testified when this occurred and what tract of land he lived on.[2] The only evidence of a building involved a different owner who had encroached on LPC's boundaries on the Singleton Survey in 1992. There is undisputed evidence that Holmes had a deer skinning rack on the property. Finally, there is also evidence that Holmes planted gardens. However, such gardens were planted on tracts of land under the Flowers Survey and Holland Survey which were not awarded to Holmes by the jury. We conclude that there is less than a scintilla of evidence to support exclusive possession of the property Holmes claims.

■■■■ Both in briefing to this court and in oral argument, Holmes emphasized the fact that he traversed the property for a period of years and that LPC was aware of this. Therefore, he contends his use of the land was exclusive. We disagree and consider the evidence which reflects that Holmes and LPC had a landlord-tenant relationship. Once the landlord-tenant relationship is established, possession by the tenant will not be considered adverse to the owner until (1) there is repudiation of the relationship and the assertion of a claim of right adverse to the owner, and (2) notice of such repudiation is given to the owner. See *Bustamante v. Gutierrez Flores*, 770 S.W.2d 934, 937 (Tex.App.-San Antonio 1989, no writ); *Radford v. Garza*, 586 S.W.2d 656, 661 (Tex. Civ. App–Corpus Christi 1979, no writ). Joint or common possession by the claimant and the owner prevents the claimant's possession from the requisite quality of exclusiveness. *Rick*, 214 S.W.2d at 927; *Holdsworth v. Guthrie Trust*, 712 S.W.2d 177, 179 (Tex. Civ.App.-San Antonio 1986, writ ref'd n.r.e.). It is undisputed that Holmes was a

---

**2.** Holmes also admitted that for a period of years, beginning in 1962 through the late sixties, he moved from the area and lived in Beaumont, Texas.

member of the Pavey Field Hunting Club and Village Mills Hunting Club both of which leased the property from either Kirby or LPC.[3] Holmes admitted that as a tenant he never made known to either LPC or Kirby that he claimed the property as a non-tenant. There is also evidence that in the 1970's and other times he would approach either Kirby and LPC as the land owners to complain of trespassers or seek reduction in the lease payments. This evidence reflects Holmes's acknowledgment as LPC as owner and is no evidence of repudiation.

Moreover, there is evidence that Kirby and LPC, as owners, undertook to exercise their control or dominion over the land and that Holmes made little or no effort to interfere until the late 1990's. *See Rick,* 214 S.W.2d at 927. Holmes admits that LPC would plant timber, harvest timber and paint lines on the land when they wanted.[4] He also admits, and documentary evidence supports, that he sought an easement from LPC in 1995 over the land in question to run an electrical line to his property. Finally, Holmes also admitted that he paid LPC for timber he harvested in 1996 on portions of the property he now claims. Unfortunately, Holmes's activities of planting, gardening and hunting are no evidence of repudiation. *See Bustamante,* 770 S.W.2d at 938. Further, such activities are not inconsistent with Holmes's use of the land as a tenant. *See Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707, 710 (Tex.1960). Accordingly, the evidence establishes a joint tenancy relationship and, as such, negates Holmes's adverse possession claim. *See Bustamante,* 770 S.W.2d at 938.

Finally, notwithstanding his admission at trial that LPC possessed a deed to the property he now claims, he asserts that the property surrounding his twelve acres which are in conflict supports his claim. We disagree. LPC's title is based upon the Nordman Survey. It is undisputed that the Nordman Survey is the more senior survey. In Texas, the rule is settled that a junior survey must be made to conform to and harmonize with an older survey because the older survey cannot be extended or varied to satisfy the calls of the junior survey. *See State v. Franks,* 113 S.W.2d 589, 596 (Tex.Civ.App.-Austin 1937, writ ref'd). Here, the Nordman Survey is the most senior survey. For this reason, any conflict in the acreage description is not relevant.

## CONCLUSION

Because we conclude there is less than a scintilla of evidence to support Holmes's adverse possession claim, we reverse the judgment of the trial court and render judgment in favor of appellant Louisiana Pacific Corporation.

---

**3.** Holmes testified that he was not under the impression the property he now claims was covered by the various hunting leases. The evidence at trial included the leases with Village Mills and Pavey Field leases. The land description on these leases included the property which Holmes now claims. In fact, Holmes signed the Pavey Field lease agreement on behalf of Pavey Field.

**4.** In oral argument, Holmes contended these actions took place on tracts not awarded by the jury. A review of record reflects that the evidence does not distinguish where these acts occurred.