In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00250-CR
______________________________


MARIO CANO, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 380th Judicial District Court
Collin County, Texas
Trial Court No. 380-82070-04


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            A jury found Mario Cano guilty on two counts of aggravated sexual assault and two counts
of indecency with a child.


 The named victim was a young girl,


 who was ten years old at the time
of the assault. The jury assessed Cano's punishment at fifty years' imprisonment on both aggravated
sexual assault counts, and Cano's punishment for both indecency charges was assessed at fifteen
years' imprisonment. Cano now appeals, contending the evidence is legally and factually insufficient
to support the conviction because N.C. did not specifically identify Cano in open court as being the
perpetrator of the crimes. We affirm.



I.         Procedural History
            The background of this case is procedurally more complex than the above synopsis might
otherwise suggest. The indictment in this case is but one of six indictments the grand jury originally
returned against Cano, and each of those indictments concerned a different complainant. 
Additionally, each of six indictments contained multiple counts—with the exception of the
indictment in a companion appeal, Cano v. State, cause number 06-05-00248-CR. And to then
further complicate matters, the State elected to consolidate all six cases into a single jury trial. See
Tex. Pen. Code Ann. § 3.02 (Vernon 2003). After both sides had presented their respective cases,
but before submitting them to the jury, the trial court granted Cano's motions for directed verdicts
in two of the cases. The jury subsequently found Cano guilty in the remaining cases of all counts,
with the single exception of the third of three counts in a companion appeal of trial court cause
number 380-82067-04. See Cano v. State, cause number 06-05-00247-CR. In all, the State secured
nine different convictions against Cano. With this procedural background in mind, we turn to the
issues Cano presents in this appeal. 
II.       Evidentiary Sufficiency
            Cano contends the evidence is legally and factually insufficient to support his conviction
because N.C. (the complainant in this case) never identified Cano in open court as the person who
had sexually assaulted her. In reviewing the legal sufficiency of the evidence, we view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review of the evidence for factual sufficiency, we
view all the evidence in a neutral light and determine whether the evidence supporting the verdict
is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the
verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 486 (Tex. Crim. App. 2004)). 
            N.C. was almost thirteen years old by the time Cano's cases went to trial. N.C. testified that,
when she was younger, a man named "Mario" had once lived in her home, but that man named
"Mario" now lives in jail. N.C. told the jury how Mario had often fondled her breasts and had once
forced her onto a bed so that he could then lay on top of N.C. while rubbing his body against hers
(even though both had their clothes on at the time). On a different occasion, when N.C. was going
to her room after showering, "Mario" grabbed her, pushed her into his room, threw her on the bed,
pulled down his pants, and forced her to put her hand on his penis. N.C. did not, however,
specifically identify the appellant in this case as being the same "Mario" who had sexually assaulted
her. Similarly, the complainants in Cano's other cases provided specific testimony regarding their
victimization, but none were asked to identify Cano specifically in open court as being the same
"Mario" or "Mario Cano" about whom they had testified as having perpetrated the crimes. 
Accordingly, there would seem to be an apparent evidentiary disconnect between the evidence of
abuse (which was provided through the complainants' various testimony) and the identification of
the appellant as being the same person who committed the crimes identified in the victims'
testimony.
            The complainants' testimony did not, however, constitute the entirety of the State's evidence. 
Paulina Dominguez, N.C.'s mother, also testified. Dominguez identified Cano in open court as being
the same "Mario" who had lived with the family, as being the person who cared for N.C. and the
other children when the other adults went to work, as being the person who celebrated holidays and
other special occasions with N.C. and her extended family, and as being the same person about
whom all the complainants had made outcries of sexual abuse. 
            Identity of the person committing a crime may be proven by circumstantial evidence. Earls
v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). No formalized procedure is required to prove
the identity of the accused. Proof by circumstantial evidence is not subject to a more rigorous
standard than proof by direct evidence. Roberson v. State, 16 S.W.3d 156, 167 (Tex. App.—Austin
2000, pet. ref'd); see Couchman v. State, 3 S.W.3d 155, 162–63 (Tex. App.—Fort Worth 1999, pet.
ref'd) (proof a person named "Tony" improperly touched complainant found to be sufficient evidence
when combined with testimony of grandmother of complainant who testified defendant was called
"Tony" and identified defendant as the "Tony" she was referring to).
            Given Dominguez' additional and specific testimony, we believe the jury had before it legally
sufficient evidence to link N.C.'s allegations of sexual assault to Cano. On appeal, Cano tangentially
suggests that someone else who had lived in the house might have committed these acts. But there
is no evidence in the record to link anyone other than Cano to N.C.'s outcries of abuse. The State's
outcry witness specifically identified Cano as being the person about whom the children had
complained, and Cano did not bring forth any evidence in the court below that there were others who
had lived in that house who could be linked to these allegations of sexual assault. Thus, we cannot
say that this complete absence of contrary evidence is sufficient to outweigh all the evidence
supporting the jury's verdict. And, after a thorough review of the record, we also cannot say there
is anything about the jury's verdict that "shocks the conscience" or otherwise appears to be manifestly
unjust. Accordingly, we overrule Cano's first and second points of appeal. 
III.      Conclusion
            Finding the evidence both legally and factually sufficient to support the identification of Cano
as the same "Mario" identified by the complainant as being her assailant, we affirm the trial court's
judgment.

 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          July 28, 2006
Date Decided:             August 22, 2006

Do Not Publish



t. denied). To establish title through adverse possession, the possession must unmistakably assert
a claim of exclusive ownership in the occupant. Perkins v. McGehee, 133 S.W.3d 287, 293 (Tex.
App.—Fort Worth 2004, no pet.) (asserting title under ten-year adverse possession statute). 
            Most troublesome for Moser is the fact that he leased the property, now owned by Batchelor,
from Batchelor's predecessor in interest, the Porters. The affidavits of Moser and Matteson
acknowledge that they had leased "the neighboring Porter property" (subsequently purchased by
Batchelor) beginning in 1980 and continuing until 1998. Batchelor's motion for summary judgment
includes evidence of the lease ending in 1998. "The possession of an adverse claimant must be
exclusive of the true owner, and any joint or common possession by the claimant and the owner
defeats the requisite quality of exclusiveness." W. End API, Ltd. v. Rothpletz, 732 S.W.2d 371, 375
(Tex. App.—Dallas 1987, writ ref'd n.r.e.). In Louisiana Pacific Corp. v. Holmes, 94 S.W.3d 834
(Tex. App.—San Antonio 2002, pet. denied), a jury found for the adverse claimant. Holmes claimed
he had been hunting on and using the land in question and owned it through adverse possession. The
jury agreed; the court of appeals did not. It was very significant, in the court's analysis, that Holmes
had entered into a hunting lease with Louisiana Pacific. "Once the landlord-tenant relationship is
established, possession by the tenant will not be considered adverse to the owner until (1) there is
repudiation of the relationship and the assertion of a claim of right adverse to the owner, and
(2) notice of such repudiation is given to the owner." Holmes, 94 S.W.3d at 839 (citations omitted). 
The court cited several other examples of Holmes' conduct which failed to demonstrate that Holmes
used the land, but not exclusively. Id. (such as planting gardens, running horses, maintaining a
fence, firing shots at the record owners engaged in logging activities, and "put[ting] people off that
didn't have any right to be there.") On the facts presented, Moser has not shown an adverse claim
to the tract during the time that he leased the property. 
            Nonetheless, Moser contends a predecessor in interest, Farris, adversely possessed the same
property from 1968 until 1980, and such possession resulted in a limitation title ripening in Farris,
which was ultimately conveyed to Moser. This case is factually similar to Dale v. Stringer, 570
S.W.2d 414 (Tex. App.—Texarkana 1978, writ ref'd n.r.e.). There, the adverse claimant, Stringer,
had possessed the property only nine years and could not ripen the adverse title by her own
possession. She then relied on the possession of a predecessor in title who had adversely possessed
the property from the 1930s to the 1950s. Id. at 417. The court found that a limitation title had
matured in the predecessor. When title by limitation has matured, there is no further place for
tacking, and the title so matured cannot be transferred orally, but can be conveyed only by an
instrument in writing. Id. at 418. The instrument must include the disputed tract in order to convey
the matured title.  Id. Likewise, Moser can only receive the matured limitation title through an
instrument in writing. According to the affidavits, Farris conveyed his interest in the property to the
F.H.A. in 1980. The F.H.A. conveyed its interest to Matteson and Moser in 1988. So the issue
before this Court is whether there is in the record a fact issue that Farris matured a limitation title
by his possession, which has now been conveyed to Moser. In support of this proposition, Moser
presented affidavits, including one from Farris. Farris purchased the property in 1968 and conveyed
it to the F.H.A. in 1980. Farris' affidavit refers to the Moser property as the "Littlejohn" tract and
states that the fence was treated as the property line from 1968 to 2001; that the owners of the Porter
property never used any of the land beyond the fence on the Littlejohn side for agriculture; and that
the entire portion (of the disputed tract) was peaceably used and enjoyed by the owners of the
Littlejohn property for agricultural purposes before 1968 until 2001. The owners of the Littlejohn
property cultivated and used all the land up to the fence line. Moser alleges the ten-year statute of
limitation ripened title in Farris. The statutory requirement for the ten-year statute of limitations is
that one must establish adverse possession showing peaceable and adverse possession by another
who "cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem. Code Ann. § 16.026(a)
(Vernon 2002). These facts, if taken as true, at least create an issue on whether Farris ripened a
mature limitation title by adverse possession during the years 1968–1980 that was ultimately
conveyed to Moser.


 Based on this analysis, the trial court erred in granting Batchelor's motion for
summary judgment and properly denied Moser's motion. 
            We find there to be conflicting evidence regarding the boundaries of the parties' respective
properties here which create genuine issues of material fact on both the determination of legal title
and title by adverse possession. Accordingly, the trial court erred in granting summary judgment for
Batchelor. We affirm the trial court's judgment denying Moser's motion for summary judgment. 
Batchelor's summary judgment is reversed and remanded to the trial court for further proceedings
consistent with this opinion. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 27, 2005
Date Decided:             May 13, 2005