**Reversed and Rendered and Opinion filed May 7, 2024.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

---

### NO. 14-23-00201-CV

---

**THE STATE OF TEXAS, Appellant**

**V.**

**MILLER MACHINE & WELDING, INC., Appellee**

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2018-23407**

---

### O P I N I O N

In this adverse-possession case, the State of Texas challenges the trial court's judgment granting Miller Machine & Welding, Inc., title of that portion of a railroad right-of-way that Miller had leased from the railroad for over thirty-five years in the mistaken belief that the railroad owned the property. In the dispositive issue, the State argues that Miller could not prove that it exercised hostile, adverse, or exclusive possession of the property because Miller rented the property throughout

its occupancy. We agree. Thus, without addressing the State's remaining issues, we reverse the judgment and render a take-nothing judgment against Miller.

## I. BACKGROUND

In 1895, in what is now the City of Seabrook, Texas, P.E. Nicholson Sr. granted the Galveston, La Porte and Houston Railway Company Corporation a railway right-of-way 150 feet wide and traversing Nicholson's property approximately from north to south. We refer to the railway company and its successors collectively as "the Railroad" and the document creating the easement as "the Railroad Deed." Later that year, Seabrook N. Sydnor bought Nicholson's property, and the following year, Sydnor, as president of the Seabrook Town Lot & Improvement Co., filed the Seabrook subdivision's original plat. This plat was superseded in 1903, when the subdivision was replatted and the roads dedicated for public use. The final plat includes all of the Nicholson property deeded to Sydnor. In the 1930s, the State constructed State Highway 146 bordering the eastern line of the Railroad easement. To accomplish this, the State acquired title to, or an easement over, each block shown in the 1903 plat as abutting the eastern line of the Railroad right-of-way.

In 1979 or 1980, Miller's owner Franklin Miller began leasing a portion of the eastern half of the Railroad easement for his business, Miller Machine & Welding, Inc. The parties generally do not distinguish between the man and the company, and we follow their example, referring to either or both as "Miller."

Miller rented the disputed property from the Railroad, which represented to him that it owned the property. Over time, Miller began to lease a larger area and to sublet part of the leased premises to others. He rented the disputed property until 2017, when the Railroad informed Miller that it was terminating the lease. The State was then acquiring the land within the Railroad easement to expand the neighboring

2

highway's right-of-way, and the Railroad quitclaimed its interest to the State, which paid Miller for his improvements to the premises.[1]

Miller then filed this trespass-to-try-title action,[2] asserting that he had acquired the land by adverse possession, and that his title was superior to that of the owners, whom Miller identified as the unknown heirs of P.E. Nicholson Sr. ("the Heirs"). The trial court appointed an attorney ad litem "for the unknown heirs of P.E. Nicholson, Jr." and required Miller to notify the State of the suit, whereupon the State intervened in the case as a defendant. The State argued that (1) the grantors did not retain a reversionary fee interest in the land within the Railroad easement; (2) the Railroad did not abandon or terminate the easement before quitclaiming its interest to the State; (3) State-owned land is not subject to adverse possession, and because the State owns the land abutting the eastern line of the Railroad easement, it also owns the land to the center of the easement, which includes the property claimed by Miller;[3] and (4) Miller cannot adversely possess the rented property because he occupied the land as a tenant rather than under a claim of ownership.

The case was tried without a jury, and the trial court ruled in Miller's favor. After making a few alterations, the trial court signed Miller's proposed judgment, which included Miller's proposed findings of fact and conclusions of law. In

---

[1] The State and Miller stipulated that the State would not argue that Miller's removal from the premises defeats the adverse-possession claim.

[2] Although Miller pleaded and continues to maintain that this is a quiet-title action, the true character of an action is determined by examining the substance of the petition. *Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021). Miller pleaded that it had adversely possessed the subject property and asked the trial court to grant Miller title. Because this case is a dispute over title to land, it is, as a matter of law, a trespass-to-try-title action, "and "must be treated as such." *See id.* at 833–35 (quoting *Martin v. Amerman*, 133 S.W.3d 262, 264 (Tex. 2004), *superseded in part by statute on other grounds*); *see also* TEX. PROP. CODE § 22.001(a).

[3] The State contends that it owns the land on both sides of the Railroad right-of-way, but because all of the land that Miller claims is located on the eastern half of the Railroad easement, only the State's claim to own the eastern half of the easement was at issue.

accordance with Miller's theory of ownership, the trial court found or concluded that the Railroad Deed authorized the Railroad to use the easement exclusively for "railroad purposes." The trial court also stated the findings or conclusions paraphrased below, which the State challenges on appeal on no-evidence grounds:

- The State's claimed ownership of the lands abutting the Railroad easement does not give the State the right to claim ownership of the disputed property because, in the Seabrook Deed conveying title to the land, the grantors reserved and excepted "any right to make a claim upon the lands within the easement of the railroad";

- When the easement terminated, full and unencumbered title reverted to the Grantors;

- The Railroad terminated the easement by removing its tracks and ceasing all service between 1980 and 1986;

- The Heirs were the lawful owners of the disputed property throughout Miller's occupancy;

- Miller held the land in hostile occupation to the Heirs, and possessed and used it continuously, openly, notoriously, exclusively, and peaceably for the ten-year period required to establish adverse possession; and

- Miller is recognized as the lawful owner of record since March 1989.

Finally, the trial court concluded that "the State must avail itself of its power of Eminent Domain to acquire a perpetual easement for highway purposes" and ordered the State "to undertake acquisition in compliance with Art. 17 of the Texas Constitution immediately to rectify the unlawful eviction of [Miller] in 2017."

On appeal, the State reurges the arguments it made in the trial court and additionally contends that no evidence supports the trial court's findings described above. In addition, the State contends that the trial court committed harmful error by failing to issue findings of fact and conclusions of law, and that, as a matter of law,

the State can acquire land for a right-of-way in fee and is not limited to acquiring "a perpetual easement."

## II. ISSUES PRESENTED

The State presents five issues on appeal. It argues in its first two issues that it conclusively established that it owns the disputed property. In its third and fourth issues, the State maintains that no evidence supports the trial court's determination that Miller Machine adversely possessed the property. The State asserts in its fifth issue that the trial court committed harmful error by failing to issue findings of fact and conclusions of law.[4]

## III. STANDARD OF REVIEW

When reviewing the trial court's findings of fact and conclusions of law after a bench trial, we are not bound by the trial court's designation of a statement as a factual finding or a legal conclusion but will instead apply the standard of review appropriate to each. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 n.7 (Tex. 2019). We review a trial court's factual findings under the same well-established appellate standards that apply to a jury's verdict. *Id.* at 653.[5] If the trial court made a factual finding of least one element of a ground of recovery or defense, then omitted, unrequested elements, if supported by the evidence, are supplied by presumption in support of the judgment. TEX. R. CIV. P. 299. We review conclusions of law de novo. *Bos v. Smith*, 556 S.W.3d 293, 299 (Tex. 2018).

---

[4] This is factually incorrect. Although Texas Rule of Civil Procedure 299a states that findings of fact and conclusions of law are not to be recited in the judgment, the trial court did so in this case. *See* TEX. R. CIV. P. 299a. We give effect to such findings so long as they do not conflict with those in a separate document. *Isaac v. Burnside*, 616 S.W.3d 609, 614 (Tex. App.— Houston [14th Dist.] 2020, pet. denied). There accordingly is no need to abate the case for the trial court to issue findings of fact. We overrule this issue.

[5] *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (legal sufficiency); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (factual sufficiency).

## IV. ADVERSE POSSESSION

"'Adverse possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1). Here, Miller asserted its adverse-possession claim under the ten-year limitations statute, which provides that "[a] person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." *Id.* § 16.026(a). To prevail under this statute, a person must prove by a preponderance of the evidence that the possession of the disputed property by the person, or by the person's predecessors in interest, was (1) actual and visible; (2) adverse and hostile to others' claims of ownership; (3) open and notorious; (4) peaceable; (5) exclusive; and (6) involved continuous cultivation, use, or enjoyment for ten years. *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69–70 (Tex. 2011); *Castillo v. Luna*, 640 S.W.3d 256, 260 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

## V. ANALYSIS

In the State's dispositive argument, it contends that Miller cannot prove adverse possession because he leased the premises. We agree.

To establish adverse possession, the claimant's possession must "be inconsistent with and hostile to the claims of *all* others." *Marshall*, 342 S.W.3d at 70; *see also Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006) (per curiam) (same). The "possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *Marshall*, 342 S.W.3d at 70 (quoting *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (sub. op. on denial of

reh'g). But here, there is no evidence that Miller entered or occupied the premises with the intent to claim ownership of the property to the exclusion of the Railroad.

Franklin A. Miller signed a written lease to rent the premises from Southern Pacific Transportation Company effective July 1, 1980. The lease was for a term of one year, followed by a month-to-month tenancy, and specified, "Railroad reserves for itself, its successors, assigns and licensees, the right to construct, maintain and operate any existing tracks and existing and new or additional pipe, telegraph, telephone and power transmission lines upon, over and beneath the leased premises." Miller was required to maintain the leased premises in a condition satisfactory to the Railroad, provide proof of liability insurance, and obtain the Railroad's written consent to the subletting of any part of the leased premises. He agreed that the Railroad had the right to enter the premises at reasonable times to inspect the same, and that in the event of default, the Railroad "shall have the right to terminate this lease forthwith and to retake possession of the leased premises." The lease also gave the Railroad the right to terminate the lease if Miller ceased using the premises for a machine and welding shop for a period of ninety days.

Miller never repudiated the lease. To the contrary, Miller testified at trial,

- "The railroad leased it to me. They leased it to me."

- "I owned the buildings and they owned the land, but we didn't know—they didn't own the land . . . ."

- "[O]ccasionally they would raise the rent on me."

- "[W]hen I received a bill, I paid it."

- "Over the years, I would acquire lease after lease from the railroad, and then I would sublease it out to individuals."

At trial, Miller stated repeatedly that the Railroad claimed to own the property and that he leased the land, paying rent to the Railroad.[6] Indeed, Miller entered into a number of supplemental agreements with the Railroad, such as when Miller increased the size of the premises he leased or obtained the Railroad's consent for Miller to sublease the property. The Railroad entered into such agreements (or simply raised the rent pursuant to the lease's terms) more than a dozen times over the period of Miller's occupancy until, by its letter of August 23, 2017, the Railroad notified Miller that it was terminating the lease. Miller described the letter, saying, "That was the last notice, hey, it's time to go, you know, which I knew by correspondence with them, and I had all my other tenants that I had to take care of, too, to tell them, hey, you know, the railroad is kicking us all out." Miller testified, "I wouldn't have ever left if they wouldn't have canceled it."

But one cannot exercise hostile, adverse, exclusive possession of property under a claim of right while renting the property from the purported owner. *See, e.g.*, *Castillo*, 640 S.W.3d at 261 (years when claimants' family rented the premises do not count toward limitations for adverse possession); *see also La. Pac. Corp. v. Holmes*, 94 S.W.3d 834, 839–40 (Tex. App.—San Antonio 2002, pet. denied) ("Once the landlord-tenant relationship is established, possession by the tenant will not be considered adverse to the owner until (1) there is repudiation of the

---

[6] At one point Miller testified that the Railroad "acquired it [i.e., the property] by eminent domain or however you want to say they acquired it, and then when they wanted to give it up, that's when they came to me and said we'll sell it to you for this amount of money, and I bought it." Miller appears to have been referring only to ownership of a leasehold interest, for he testified, "once I started paying the lease payments, I considered that my, you know, *lease property that I own*." (emphasis added). In any event, Miller pleaded ownership only by adverse possession, and because the trial court found that Miller adversely possessed the property from "the Heirs of P.E. Nicholson," the trial court presumably did not credit Miller's testimony that the Railroad owned the property and sold it to Miller.

relationship and the assertion of a claim of right adverse to the owner, and (2) notice of such repudiation is given to the owner.").

The fatal flaw in Miller's claim is that, in adverse-possession cases concerning leased property, "possession by a tenant is considered to be the possession of the landlord." *McShan v. Pitts*, 554 S.W.2d 759, 763 (Tex. App.—San Antonio 1977, no writ); *see also Gaddis v. Junker*, 29 S.W.2d 911, 920 (Tex. App.—Beaumont 1930, writ dism'd w.o.j.) (adverse possession established where the land was occupied by claimant's tenant). This is true even if the landlord is not the record owner of title. As the Supreme Court of Texas explained,

> [W]e hold as a matter of substantive law that in a case such as this where title by prescription is in issue, the possession of land by an occupant who professed to hold under another person will, in law, be the possession of the latter if the purported landlord claimed to own the property at the time and there is no evidence that the occupant was, in fact, holding through or under some third person.

*Sanders v. Worthington*, 382 S.W.2d 910, 916 (Tex. 1964). "Where it appears that both parties understood that the right to occupy certain premises passed under the lease, the tenant's occupancy thereof will be treated as that of his lessor . . . ." *Id.* at 918. Here, Miller admittedly signed leases on the property and paid the agreed-upon rent and rent increases. Miller admits that the Railroad, and only the Railroad, claimed to own the property, and there is no allegation or evidence that Miller occupied the property through or under a third party. Thus, Miller's possession of the property must be considered possession by the Railroad.

Treating a tenant's occupancy as possession by the landlord makes sense, because adverse possession requires "possession inconsistent with title in others." *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 902 (Tex. 1976). Leasing the property *to* another meets this test; leasing the property *from* another does not. There accordingly are many cases in which a landlord acquired title by adverse possession

9

by proving occupancy by a tenant, but we have found none in which a tenant satisfied the requirements for adverse possession while simultaneously paying a landlord rent for the same property. The absence of such cases is understandable, given that the Texas Supreme Court has said that to acquire title by limitations, "the possession [must] be inconsistent with and hostile to the claims of *all* others." *Marshall*, 342 S.W.3d at 70 (citing TEX. CIV. PRAC. & REM. CODE § 16.021(1)) (emphasis added). Moreover, "[t]he possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (op. on denial of reh'g) (quoting *Rick v. Grubbs*, 147 Tex. 267, 270, 214 S.W.2d 925, 927 (1948) (emphasis in original)). Because Miller leased the property from the Railroad, his occupancy was not inconsistent with or hostile to the Railroad's claim of ownership. Were it otherwise, a landlord could not adversely possess property occupied by a tenant, and we know that is not the case. In addition, Miller's possession pursuant to a lease was not an unmistakable claim of exclusive ownership, but rather, was consistent both with the Railroad's representations that it owned the property and with Miller's status as a tenant.

Because there is legally insufficient evidence that Miller held the property for at least ten years in hostile, adverse, or exclusive possession, we sustain the State's third issue, in which it raised this argument.

## VI. CONCLUSION

For the foregoing reasons, and without addressing the merits of the remaining issues and arguments, we reverse the trial court's judgment and render judgment that Miller take nothing.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.