LEO Z. RICK V. W. D. GRUBBS, JR., ET AL.

No. A-1823. Decided November 10, 1948.
Rehearing overruled December 8, 1948.
214 S. W., 2d Series, 925.)

*Charles S. Pipkin* and *Alto V. Watson,* both of Beaumont for petitioner.

Since it appears without dispute in the record that Rick is the record owner of the premises in question and that neither Grubbs nor those in privity with him ever paid any taxes on the land or had any continuous ten-year possession thereon, the trial court properly instructed a verdict for Rick. Bishop v. Gilmer Co., 131 S. W. (2d) 173; Cobb v. Robertson, 86 S. W. 746; Combes v. Stringer, 106 Texas 427, 167 S. W. 217.

*D. H. O'Feil,* of Beaumont, for respondents.

The acts of Rick in permitting the pipe line to cross the lot; the erection of a sign board on the premises; the entry upon the premises by Jefferson County, and the use thereof by United States Army, did not constitute such re-entries on the premises as to interrupt Grubbs' exclusive possession thereof so as to

mature his title by limitation. Mosely v. Withie, 26 Texas 720; Texas Land Company v. Williams, 51 Texas 51; Reed v. Allen, 63 Texas 154.

MR. JUSTICE HART delivered the opinion of the Court.

This is a suit in trespass to try title, brought by the petitioner, Leo Z. Rick, who, by stipulation of the parties, is conceded to be the owner of the record title to the land in controversy, Lot No. 4 in Block 1 of the Wescalder Addition to the City of Beaumont. Petitioner purchased this lot in 1924. The respondents are W. D. Grubbs, Jr., and his grantee, T. B. Jones. The only defense raised by the evidence is the claim of title by adverse possession under the ten year · statute of limitation, Article 5510, Vernon's Annotated Civil Statutes. At the conclusion of the testimony the district court instructed a verdict in favor of the petitioner on the ground that the respondents had failed to meet their "burden of proof of open, adverse claim", entitling them to limitation title, and judgment was entered accordingly. The Court of Civil Appeals reversed and remanded the case for a new trial on the grounds that there was an issue of fact raised by the evidence as to whether the respondents had exclusive possession of the land for the limitation period and that the re-entries made upon the land by the petitioner did not as a matter of law break the continuity of respondents' possession. 212 S. W. (2d) 489.

■ Upon a consideration of the record, we have concluded that the judgment of the district court was correct and that the Court of Civil Appeals erred in reversing it, because the evidence wholly fails to show that the respondents had adverse possession of the land, as required by Article 5510 and as defined by Article 5515, Vernon's Annotated Civil Statutes.

The respondent Grubbs testified that he purchased the adjoining lot, No. 5, in the same addition, on December 15, 1931, and that he moved on Lot No. 5 ·about fifteen days later. In January, 1932, he erected a fence which enclosed Lot No. 4 with Lot No. 5. Grubbs testified that he pastured cows, sheep and horses on Lot No. 4, that he built a servant's house and a barn, which were partially on Lot No. 4 as well as Lot No. 5, that he pulled fig stumps on Lot No. 4 and had a garden on a part of it, that he plowed and leveled Lot No. 4 and planted it in clover and had it mowed, and that he planted trees on it. He continued to use Lot No. 4 with Lot No. 5 until he moved away in 1943. In 1946 he executed and delivered a deed to Lot

No. 4 to the respondent, T. B. Jones. Grubbs testified that he did not know Rick until the present suit was filed and that all of the acts which Grubbs did in connection with Lot No. 4 were done without the permission of Rick. Rick testified that Grubb was using Lot No. 4 with Rick's permission, but for the purpose of this appeal we must consider Grubbs' version of the facts to be true.

The evidence shows without dispute that Rick rendered Lot No. 4 for taxes and paid taxes thereon for all of the years during which Grubbs claims to have had adverse possession of it, and also that during this period Rick exercised dominion over the lot in the following ways:

(1) The parties stipulated that in May, 1932, Rick conveyed to Gulf Pipe Line Company a right of way one hundred feet wide across Lot No. 4. The evidence shows that under this grant the pipe line company laid seven pipe lines across this lot and that one of its employees entered the enclosure to make inspection trips across the lot at least once each day. Grubbs made no protest against the construction of the pipe lines across Lot No. 4 and did not interfere with the pipe line company's employees; in fact, he testified that he agreed with the pipe line company's employees that the company could put a gate in the fence so that the inspections could be made more easily, and that this gate was constructed in the fence.

(2) In August, 1939, Rick sold to the State of Texas a strip of land twenty-five feet wide along one side of Lot No. 4, which was purchased for the purpose of widening United States Highway No. 90. The fence which Grubbs had constructed along this line was torn down and moved back to the new line. Grubbs made no claims to any part of the purchase price of this strip and did not protest against the tearing down and moving of the fence. During this same time, Grubbs was engaged in a condemnation suit with Jefferson County involving a portion of Lot No. 5, which was taken for the same project, but in that lawsuit and in the settlement negotiations Grubbs asserted no claim to ownership of Lot No. 4.

(3) In 1939 Rick granted permission to a sign builder to construct an advertising sign on Lot No. 4, and under this permission a large sign was constructed on the lot within the enclosure. No protest was made by Grubbs against the construction of the sign, and it remained on the lot for over a year, until it was blown down by a storm.

(4) In 1941 Rick gave the Army permission to maneuver over Lot No. 4, and the Army maneuvered on the land under this permission, without protest from Grubbs.

"Adverse possession", as prescribed under Article 5510, is defined by Article 5515 as follows:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

This definition has been elaborated by the decisions of this Court. In Satterwhite v. Rosser, 61 Texas 166, 171, speaking of the adverse possession prescribed in the statute of limitation, the Court said:

"It is well settled, that, where a party relies upon naked possession alone as the fundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery.

"It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i. e. adverse), and of such a character as to indicate unmistakably an assertion of a claim of executive ownership in the occupant. Sparrow v. Hovey, 44 Mich., 63; Soule v. Barlow, 49 Vt., 329; 2 Smith's Leading cases, 561 et seq.; Word v. Drouthett, 44 Tex., 373.

"The possession must be continuously and consistently adverse to the true owner. * * *"

This statement of the law was quoted with approval as the rule consistently followed by this Court in the recent decision of Heard v. State, 146 Texas 139, 204 S. W. (2d). 344, 347. See also 1 American Jurisprudence, 875, "Adverse Possession", Sec. 141; 2 Texas Jurisprudence, 74, "Adverse Possession", Sec. 39.

■ An important part of the law as so stated is that the possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant. It follows that the law's requisites are not satisfied if the occupancy is shared with the owner or his agents or tenants. See 2 C. J. S. 566, "Adverse Possession", Sec. 48:

"To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The

owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances,. the law refers the possession to the person having the legal title. * * *"

In Southwestern Lumber Co. v. Allison, (Com. App.) 276 S. W. 418, the evidence indicated that the land in question, which had been enclosed, was used jointly by the record owner's tenants and by the defendant claiming limitation title. The Court held that such joint use could not be sufficient to entitle the defendant to a judgment on his plea of limitation, saying: (276 S. W. at page 419)

"* * * Possession in order to be adverse must be exclusive. The rule is aptly stated in the case of Wichita Valley Railway Co. v. Somerville (Tex. Civ. App.) 179 S. W. 671:

" 'The law presumes the true owner is in possession until adverse possession is proved to begin, and when two persons are in mixed possession of the same land, one by title, and the other by wrong, the law considers the one who has title as in possession to the extent of his rights, so as to preclude the other from taking advantage of the statute of limitation. 2 Corpus Juris, Adverse Possession, Sec. 587, p. 264; Satterwhite v. Rosser, 61 Tex. 166. * * *' "

In Black v. Goolsbee, 226 S. W. 463, (writ of error dismissed) the evidence showed that the defendant, claiming title by limitation, had fenced and cultivated a tract of land for over ten years. During this period, however, the record owners went on the land and cut and removed timber from the tract so occupied. While this timber was being cut and removed, the defendant asserted no claim to it and did not oppose the record owners' acts in cutting and removing it. The Court held that title by adverse possession had not been established.

In analagous cases it has been held that where the record owner or persons claiming under him enter upon unenclosed land, the adverse possession of the limitation claimant is thereby restricted to the land actually enclosed and occupied by him. Evitts v. Roth, 61 Texas 81; Evans v. Houston Oil Company, (Com. App.) 231 S. W. 731; Furlow v. Kirby Lumber Co., 53 S. W. (2d) 642.

The facts in the present case show that Grubbs did not have such adverse possession as the law requires in order to perfect limitation title. Under the undisputed evidence, the record owner's tenants, licensees and grantees were permitted to enter and use the land freely without any protest from Grubbs. Whenever the owner understook to exercise any control or dominion over the land, Grubbs made no effort to interfere. At most, the evidence showed a claim by Grubbs to a right to use the land jointly with the record owner and those claiming under him; it certainly did not unmistakably indicate a claim to exclusive ownership in Grubbs. The trial court was therefore correct in holding tht the adverse claimant had wholly failed to sustain by proof his claim of adverse possession sufficient to show title by limitation.

We do not question the authority of the cases cited by the Court of Civil Appeals, Cobb v. Robertson, 99 Texas 138, 86 S. W. 746; Glover v. Pfeuffer, 163 S. W. 984; and Burroughs v. Smith, 8 S. W. (2d) 301. In those cases the evidence established the adverse character of the claimant's possession, and the question was whether the continuity of his possession was broken by re-entries by the record owner or other persons, not amounting to a complete ouster of the adverse claimant from possession. That question is not presented here, because the evidence fails to show the hostile possession under an unmistakable claim of exclusive ownership which is required by the settled construction of our limitation statute.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

Opinion delivered November 10, 1948.

Rehearing overruled December 8, 1948.