Opinion issued July 1, 2010

 

 

 

 

 

 

 

 

 

 

 

 

 

 

            

 

 











 
 
 
 
 




                                                                                                                                                            

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

____________

 

NO. 01-08-00572-CV

____________

 

JOE B. GULLEY JR. AND IMELDA GULLEY, Appellants

 

V.

 

WIRT DAVIS, II, INDIVIDUALLY, CATHERINE B. TAYLOR,
INDIVIDUALLY, VALLEY OAK INVESTMENTS, L.P., CAMILLA R. BLAFFER AND TEXAS GULF
BANK, N.A., CO-TRUSTEES OF THE CAMILLA B. MALLARD TRUST, JOAN B. JOHNSON AND
BESSEMER TRUST CO., CO-TRUSTEES OF THE JOAN B. JOHNSON TRUST, AND PDB
PROPERTIES, LTD., Appellees

 



 

On Appeal from the 411th District Court

Polk County, Texas








Trial Court Cause No. CIV-22120-A

 



 

OPINION ON REHEARING

          Appellants, Joe B. Gulley Jr. and
Imelda Gulley (“the Gulleys”), have filed a motion for rehearing.  We
deny rehearing but withdraw our
opinion and judgment of April 14, 2010 and substitute this opinion and judgment
in their place.

          In this case involving adverse
possession of the mineral rights in a 52-acre tract, the Gulleys appeal from a
summary judgment in favor of appellees, Wirt Davis, II, individually; Catherine
B. Taylor, individually; Valley Oak Investments, L.P.; Camilla R. Blaffer and
Texas Gulf Bank, N.A., co-trustees of the Camilla B. Mallard Trust; Joan B.
Johnson and Bessemer Trust Co., co-trustees of the Joan B. Johnson Trust; and
PDB Properties, Ltd. (collectively, “the Davises”).  In three issues, the Gulleys assert the trial
court erred by excluding a deed and six affidavits from summary-judgment
evidence and by granting summary judgment in favor of the Davises.  We conclude the error, if any, in excluding
the deed is not reversible error and any error in excluding the affidavits is
waived.  We further conclude the trial
court properly granted summary judgment on the grounds that the evidence
established as a matter of law the possession in this case was not exclusive of
and adverse to the title owner of the property.  We affirm.

Background

          In 1835, the State of Coahuila and
Texas granted one league of land in Polk County, Texas to Lowrey T. Hampton (“the
League”), and, through various conveyances, George Davis acquired title to all
the real property within the League. 
This case concerns a dispute over ownership of the minerals in a 52-acre
tract located within the League.  The Davises
claim to be the successors in interest to George Davis and his wife, Camilla
Davis.  The Gulleys claim to be the
successors in interest to William and Rosia Moore.  

          In the 20 years between 1872 and 1892,
George Moore, William’s father, was the tenant of George Davis.  In 1872, George Davis leased the entire
League to George Moore.  In 1879, George
Davis conveyed 200 acres out of the League to George Moore.  These 200 acres did not include the 52 acres
at issue in this case.  At the same time,
George Moore conveyed to George Davis “all my right, title or claim to the
[League] . . . save and except those Two Hundred acres of said League . . .
this day conveyed by said Davis to me by metes and bounds in a Deed now in my
possession therefor.”  The 1879 deed also
stated, in pertinent part,








          This
Instrument is also given by me to said Davis to Evidence the fact that I am his
tenant of said League representing and holding the same.  All save and except the above mentioned Two
Hundred acres for him and those he may represent in the premises.

 

          That I am agent for him and them and will
look after said Land and protect the same from trespassers and assist them
in the sale thereof at such prices and such times as said Davis may from time
to time direct and that I will on demand of him said Davis surrender up the
possession of said Land to him . . . whenever called for and allow no one else to occupy same without the
consent of said Davis given either to me or to such persons as he may
designate.         

 

(Emphasis
added).  In 1884, George Moore sold his
200 acres and moved to another part of the League, where he built his homestead
on a 143-acre tract.  In 1888, George
Davis sold 120 acres of the League to a party not involved in this case.  In 1892, George Moore’s son William, who by
then was 20 years of age, married Rosia Thomas. 
William and Rosia began living on a portion of the League that included
the 52-acre tract presently at issue.

          In 1898, the District Court of Polk
County rendered judgment in a lawsuit concerning the League that included the
52-acre tract at issue here.  The
lawsuit, styled Prussia Harney, et al. v.
Geo. S. Davis, et al., had been filed in 1889 and both George Davis and
George Moore were named defendants. 
William Moore was not a party to the suit.  This judgment adjudicated title to the entire
League as of 1898 to George Davis, less the 320 acres in the sales described
above.  The 1898 judgment recites that
George and Ann Moore “have claimed” the land in the League, less the 320 acres
sold, as tenants in possession for George Davis.  The judgment states,

[T]he said defendants Geo. A. Moore and his wife Ann
M. Moore being shown to be tenants in possession of said defendant Geo. W.
Davis for whom alone they claim and have claimed said Land in controversy
herein it is ordered and adjudged that they go hence without day [sic] and
recover of said plaintiffs their costs herein respectively incurred . . . .

 

Thus, in
1898, George Davis was the titleholder of the entire League (less the 320 acres
he conveyed to George Moore and the third-party as described above).  

          The same year the Prussia Harney
judgment was rendered in 1898, George Davis died, leaving the League to his
wife, Camilla.  Approximately six years
later, in 1904, Camilla conveyed 3,948 acres of the League to William Carlisle
and Company, reserving the mineral estate—including the mineral estate to the 52-acre
tract presently at issue—for herself. 
Shortly after that, George Moore died.

          In 1909, almost five years after
Camilla had sold the surface acres to which she held title in the League to
William Carlisle and Company, William and Rosia Moore conveyed 78 acres of a
130-acre tract out of the League to William Carlisle and Company.  William and Rosia Moore excepted from the
grant the 52 acres involved in this case. 
In pertinent part, the 1909 deed states,

The said William Moore and Rosia E. Moore wife of the
said William Moore hereby covenant and agree with the said William Carlisle and
Company that they have occupied, claimed and been in peaceable possession of
the 130 acre tract first above described, for more than 10 years prior to this
date.

 








Thus, the
1909 deed that sells 78 adjacent acres to William Carlisle and Company states
that William and Rosia Moore “occupied, claimed, and [had] been in peaceable
possession” of the 52 acres involved in this case.  Since 1904, Camilla held title to the mineral
estate in the 52 acres, but William and Rosia Moore claimed occupation and
peaceable possession of that land since at least 1899.

          Almost one century later, the Davises
leased the 52 mineral acres in 1998 to Sun Operating Limited Partnership, who
assigned its lease to Kerr-McGee.  In
2001, the Gulleys leased the 52 mineral acres to Comstock Oil & Gas,
Inc.  Kerr-McGee and a neighboring lessee
formed a pooled unit, which included the 52 mineral acres, and drilled a well
on the pooled land.  After the well was
drilled, a title opinion revealed the Gulleys’ claim to the 52 mineral acres.

          The Davises filed suit against the
Gulleys[1]
for trespass to try title, to quiet title, for breach of contract, for unpaid
shares of proceeds derived from the sale of oil and gas production, and for
attorney’s fees.  The Gulleys responded
with a general denial and by asserting several affirmative defenses, including that
their predecessors in interest—William and Rosia Moore—adversely possessed the
52 mineral acres. 

          The Davises filed a motion for summary
judgment, asserting 53 traditional and no-evidence grounds.  The Gulleys responded to the Davises’ motion
and filed the 1909 deed as summary judgment evidence.  The Davises objected to the deed.  The trial court sustained the Davises’
objection to the 1909 deed.

          The Gulleys filed an emergency motion
for leave of court to supplement the summary judgment record with the
affidavits of Norman Smith, John Ethan Collins, B.J. Collins, Edwin Smith,
Doyle Odell Smith, and Betty J. Gulley, who testified to historical activities
and operations by the Gulleys’ predecessors in interest.  The Davises objected to the affidavits on
multiple grounds.  The trial court
granted the Gulleys leave to file the affidavits, but sustained the Davises’
objections to the affidavits.  The trial
court granted summary judgment in favor of the Davises, awarding the Davises
the 52 mineral acres in a final judgment. 
The Gulleys appealed to the Beaumont Court of Appeals, and the Texas
supreme court transferred the case to this Court.

Exclusion of Summary-Judgment
Evidence

          In their first and second issues, the
Gulleys contend the trial court erred by excluding the 1909 deed and the six
affidavits.

          A.      1909 Deed  

          In their first issue, the Gulleys
contend the trial court erred by excluding the 1909 deed because it falls
within an exception to the hearsay rule. 
The 1909 deed contains a recital that William and Rosia Moore “have
occupied, claimed and been in peaceable possession of the 130 acre tract first
above described, for more than 10 years prior to this date.”  








          Assuming the trial court erred by
excluding the 1909 deed, any error is harmless because the trial court’s
judgment does not turn on the evidence.  See
Benavides v. Cushman, Inc., 189 S.W.3d 875, 879 (Tex. App.—Houston [1st
Dist.] 2006, no pet.) (citing City of Brownsville v. Alvarado, 897
S.W.2d 750, 753–54 (Tex. 1995)) (stating evidentiary rulings do not cause
reversible error unless judgment turns on excluded evidence).  As discussed below, summary judgment was
proper because the evidence shows, as a matter of law, William and Rosia Moore
were not in exclusive possession of the 52-acre tract.  The 1909 deed does not address this element
of the Gulleys’ adverse possession claim. 
Neither the trial court’s decision nor this Court’s decision turns upon
this evidence.  See Bywaters v. Gannon, 686 S.W.2d 593, 595 (Tex. 1985) (“The fact
that the Gannons claimed the property does not satisfy their burden to tender
conclusive evidence on each essential element of adverse possession in order to
prevail as a matter of law.”).  Therefore,
the error, if any, is not reversible error. 
See Benavides, 189 S.W.3d at 879.

          We overrule the Gulleys’ first issue.

          B.      Affidavits

          In their second issue, the Gulleys
assert the trial court erred by excluding the affidavits of Norman Smith, John Ethan
Collins, B.J. Collins, Edwin Smith, Doyle Odell Smith, and Betty J.
Gulley.  Specifically, the Gulleys
contend that the affidavits are exceptions to the hearsay rule and are
admissible under Rule 803(19) as statements of reputation concerning personal
or family history, under Rule 803(20) as statements of reputation concerning
boundaries or general history, and under Rule 804(b)(3) as declarations about
family history by unavailable witnesses. 
See Tex. R. Evid. 803(19), 803(20), 804(b)(3).  

          When an appellee objects to evidence
on several independent grounds and, on appeal, the appellant complains of the exclusion
of the evidence on only one of those grounds, the appellant waives any error by
failing to challenge all possible grounds for the trial court’s ruling that
sustained the objection.  Trahan v. Lone Star Title Co. of El Paso,
Inc., 247 S.W.3d 269, 284 (Tex. App.—El Paso 2007, pet. denied) (citing Cantu v. Horany, 195 S.W.3d 867, 871
(Tex. App.—Dallas 2006, no pet.)).

          Here, in addition to objecting to the
trial court that the affidavits are hearsay, the Davises objected to each
affidavit on multiple other grounds.  The
Davises objected to all the affidavits based on relevance under Rule 402 and
lack of personal knowledge of the witnesses under Rule 602.  The specific basis for these objections is
that each witness was born in 1915 or later, after the events in question occurred
on the 52 acres.  The Davises made additional
specific objections to Norman Smith’s affidavit as follows:

1.       “Otherwise inadmissible” under Rule 403.

 

2.       Opinions concerning adverse possession are “conclusionary” and
thus incompetent under Rule 601.

 

3.       Inadmissible opinion by a lay witness under Rule 701 because
no underlying facts to support opinion disclosed.

 

4.       Statements concerning adverse possession and homestead are opinions
on mixed question of law and fact and inadmissible under Rules 702 through 706.

 

          The Davises made the following
specific objections to the affidavits of John Ethan Collins and B.J. Collins: 

1.       “Otherwise inadmissible” under Rule 403.

 

2.       Opinions concerning adverse possession are “conclusionary” and
thus incompetent under Rule 601.

 

3.       Statements concerning adverse possession and homestead are
opinions on mixed question of law and fact and inadmissible under Rules 703
through 706.

 

          The Davises made specific objections
to the affidavit of Edwin Smith as follows:

1.       “Otherwise inadmissible” under Rule 403.

 

2.       Opinions concerning adverse possession are “conclusionary” and
thus incompetent under Rule 601.

 

3.       Inadmissible opinion by a lay witness under Rule 701 because
no underlying facts to support opinion disclosed.

 

4.       Statements concerning adverse possession and homestead are
opinions on mixed question of law and fact and inadmissible under Rules 702
through 705.

 

          The Davises made specific objections
to the affidavit of of Doyle Odell Smith as follows:

1.       “Otherwise inadmissible” under Rule 403.

 

2.       Inadmissible opinion by a lay witness under Rule 701 because
no underlying facts to support opinion disclosed.

 

3.       Statements concerning adverse possession and homestead are
opinions on mixed question of law and fact and inadmissible under Rules 703
through 706.

 

          The Davises objected specifically to
the affidavit of Betty J. Gulley by asserting that the affidavit contained inadmissible
opinion by a lay witness under Rule 701 because no underlying facts to support the
opinion were disclosed.

          The trial court granted the Davises’
objections without specifying the grounds for excluding the affidavits.  On appeal, the Gulleys only assert that the
trial court erred because the affidavits were admissible under exceptions to
the hearsay rule.  The Gulleys do not
challenge any other objection that could be the basis for the trial court’s
ruling.  Therefore, the Gulleys have
waived any error in the exclusion of the affidavits on the unchallenged
grounds.  See Trahan, 247 S.W.3d at 284; Cantu,
195 S.W.3d at 871.

          We overrule the Gulleys’ second issue.

Summary Judgment

          In one of their grounds in their motion
for summary judgment, the Davises assert that the evidence established that
William and Rosia Moore held joint possession of the 52-acre tract with George
Moore, George Davis’s tenant.  Because
joint possession is not exclusive possession, the Davises contend that William
and Rosia Moore’s possession was not adverse as a matter of law.

          A.      Standard of Review

          We review a trial court’s grant of
summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Summary judgment is proper only when the
movant establishes that there is no genuine issue of material fact and that the
movant is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c).  In reviewing
a summary judgment, we must indulge every reasonable inference in favor of the
nonmovant, take all evidence favorable to the nonmovant as true, and resolve
any doubts in favor of the nonmovant.  Valence,
164 S.W.3d at 661.  When, as here, a
summary judgment does not specify the grounds on which it was granted, we will
affirm the judgment if any one of the theories advanced in the motion is
meritorious.  Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004). 








          B.      Law of Adverse Possession

          The Gulleys claim title through
adverse possession under the 10-year and 25-year limitations statutes.  Tex.
Civ. Prac. & Rem. Code Ann. §§ 16.026(a), 16.027 (Vernon 2002).  “‘Adverse possession’ means an actual and
visible appropriation of real property, commenced and continued under a claim
of right that is inconsistent with and is hostile to the claim of another
person.”  Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon
2002).  Joint use of the property with
the owner does not satisfy the statute because “possession must be of such
character as to indicate unmistakably
an assertion of a claim of exclusive ownership in the occupant.”  Tran v. Macha, 213 S.W.3d 913, 914
(Tex. 2006) (quoting Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990))
(emphasis in original); see also Rick v. Grubbs, 214 S.W.2d 925, 927
(Tex. 1948) (stating requirements of adverse possession “are not satisfied if
the occupancy is shared with the owner or his agents or tenants”); Martin v. McDonnold, 247 S.W.3d 224, 236
(Tex. App.—El Paso 2006, no pet.) (“Joint or common possession by the claimant
and the owner prevents the claimant’s possession from the requisite quality of
exclusiveness.”). 

          An owner who is in actual possession
of a portion of his land is considered to have possession of all his land; this
is referred to as “constructive possession.” 
See Coleman v. Waddell, 249
S.W.2d 912, 913 (Tex. 1952).  When an
owner is in possession through his tenant, the owner’s constructive possession
extends to the land “which their tenants h[o]ld under and for them.”  Sneed
v. Hamilton, 299 S.W.2d 769, 772–73 (Tex. App.—Beaumont 1957, no writ).  When the owner is in constructive possession
of his land, a person claiming adverse possession who is in joint possession
with the owner is limited to claiming land actually enclosed.  Coleman,
249 S.W.2d at 913; see Rick, 214 S.W.2d
at 927; Stroud v. Temple Lumber Co.,
284 S.W.2d 909, 913 (Tex. App.—Beaumont 1955, writ ref’d n.r.e.).

          When adverse possession commences
before a severance of the mineral estate, the adverse possession includes both
the surface and mineral estate.  Rio Bravo Oil Co. v. Staley Oil Co., 158
S.W.2d 293, 295 (Tex. 1942); see also
McDaniel v. Williams, 429 S.W.2d 640, 642 (Tex. Civ. App.—Tyler 1968, writ
dism’d) (“It is a well established rule of law in this state that an adverse
entry upon the surface of land extends downward and includes title to
underlying minerals where at time of entry there has been no severance of
mineral estate.”).  Adverse possession
commenced prior to limitations will extend to the mineral estate even if the
titleholder severs the mineral estate before the limitations period has fully
run.  Rio
Bravo Oil Co., 158 S.W.2d at 295.  In
contrast, possession of the surface estate that commences after a severance of
the mineral estate is not sufficient to constitute adverse possession of the mineral
estate.  Natural Gas Pipeline Co. of Am. v. Pool, 124 S.W.3d 188, 193 (Tex. 2003).  Thus, in this case involving adverse
possession of the mineral estate in the 52-acre tract, William and Rosia
Moore’s adverse possession must have commenced before Camilla Davis severed the
mineral estate by reserving it to herself in 1904.  See id.;
Rio Bravo Oil Co., 158 S.W.2d at 295;
McDaniel, 429 S.W.2d at 642.    

          C.      Analysis

          Here, the issue is whether William and
Rosia Moore acquired limitations title to the mineral estate of the 52-acre
tract.  In 1892, William and Rosia Moore began
living on the 52 acres as husband and wife.[2]  At that time, and for at least 20 years
preceding that time, George Moore, William’s father, was George Davis’s tenant
on the land at issue in this appeal.  In
the 1879 deed, George Moore specifically stated he was George Davis’s tenant on
the League; he was George Davis’s agent; and he would look after the League,
protect the League from trespassers, and surrender possession of the League to
George Davis on demand.  Similarly, in 1889,
the Prussia Harney lawsuit was filed and the judgment in that suit in 1898
stated George Moore was George Davis’s “tenant in possession” of the League.  Furthermore, in response to requests for
admissions, the Gulleys admitted George Moore and his wife resided on the
League from “prior to 1879 until a point in time after November 1904.”  See
Methodist Hosps. of Dallas v. Mid-Century Ins. Co. of Tex., 195 S.W.3d 844,
846 (Tex. App.—Dallas 2006, no pet.) (stating responses to requests for
admission are competent summary judgment evidence when incorporated into motion
and used against party making admission). 
Because George Moore, the tenant of George Davis, held the entire League
for George Davis, George Davis was in constructive possession of the
League.  See Coleman, 249 S.W.2d at 913; Sneed,
299 S.W.2d at 772–73.  Therefore, from
1892 through 1904, William and Rosia Moore’s possession of the land within the
League was joint possession with George Davis, the owner.  See Coleman,
249 S.W.2d at 913; Rick, 214 S.W.2d
at 927; Stroud, 284 S.W.2d at 913.

          Because William and Rosia Moore’s
possession of the lands within the League was joint possession with George
Davis, their adverse possession claim is limited to lands actually
enclosed.  See Coleman, 249 S.W.2d at 913; Rick,
214 S.W.2d at 927; Stroud, 284 S.W.2d
at 913.  The record contains no summary
judgment evidence showing the 52-acre tract was actually enclosed.  In their brief to this Court, the only
evidence the Gulleys identify to show the 52-acre tract was enclosed is in two
of the affidavits that were excluded by the trial court.  No evidence was admitted to show the 52-acre
tract was actually enclosed.  The Davises,
therefore, are entitled to judgment as a matter of law on the grounds that
William and Rosia Moore were in joint possession of the 52-acre tract with
George Davis, who constructively possessed the entire League through his tenant
George Moore.  See Tran, 213
S.W.3d at 915; Coleman, 249 S.W.2d at
913; Rick, 214 S.W.2d at 927.

          The Gulleys cite to the Texas supreme
court’s opinion in Tex-Wis Co. v. Johnson,
534 S.W.2d 895 (Tex. 1976).  In Tex-Wis, the court upheld a jury finding
in favor of Alexander based on Alexander’s long-time residency on the land and
the absence of any evidence that any claim of ownership was asserted by the
record owner, Tex-Wis, during that time.  Id.  at 898.   Alexander’s land was foreclosed by
Tex-Wis, but he remained on the land despite the foreclosure. Id.  Although Alexander did not
give Tex-Wis actual notice of his intent to adversely possess the land, the
court held notice of his intent could be inferred from the circumstances. 
Id.  The court observed that
“under certain circumstances, notice may be inferred” to satisfy the
requirement that a tenant notify the titleholder that he is repudiating his
tenancy as a permissive, holdover tenant.  Id.  In describing the type of circumstances sufficient to
constitute an inference of notice, the court observed that an inference of
notice may be made “when the adverse occupancy and claim of title to the
property is so long-continued, open, notorious, exclusive and
inconsistent with the existence of title in orders.”   Id. (emphasis added).  The court held
that an inference of notice of repudiation to the titleholder occurs when there
is (1) long-continued possession under claim of ownership and (2)
nonassertion of claim by the titleholder.  Id.  The court explained that nonassertion of claim by the
titleholder means “the absence of any overt act of ownership on the part of the
record owner which is inconsistent with notice of a repudiation.”  Id.  As an example of conduct found
sufficient to show a claim by a titleholder, the court said payment of taxes
shows an assertion of ownership by the titleholder.  Id.  Unlike Tex-Wis, which failed to assert any claim on the
property during the time Alexander was on the land, here, George Davis did make
an assertion of ownership.  Like the act of paying taxes, George Davis
asserted a claim on the land by leasing his land to George Moore, who held the
entire League for him.  As we note above, the Gulleys admitted that George
Moore and his wife resided on the League from “prior to 1879 until a point in
time after November 1904.”  By leasing the land and having his lessee
occupy the land, George Davis, the titleholder, asserted his claim on the
land.  Accordingly, the Gulleys have failed to establish the second
element for constructive notice, which requires the nonassertion of a claim of
ownership by the title holder.  The holding in Tex-Wis, therefore, is consistent with our holding that, at most,
William and Rosia Moore were in joint possession of the land with George Davis,
who constructively possessed the land through George Moore.

          Having determined the trial court
properly granted summary judgment on the ground of joint possession, we affirm
the summary judgment without addressing the alternate grounds.  See Joe, 145 S.W.3d at 157.  We overrule the Gulleys’ third issue.




 

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Chief Justice Radack and Justices
Alcala and Higley.











[1]           Linda Gerbens
Adams, Linda Gerbens 1987 Trust, Julia H. Gerbens Jameson, Judy Gerbens
Benkendorfer, and Patsy Gerbens Wilder were also named as defendants.  They have since settled with the Davises and
are not party to this appeal.





[2]           No
evidence conclusively proves William and Rosia Moore began living on the 52
acres in 1892.  At oral argument, in
response to a question from the panel, the Gulleys stated William and Rosia
Moore’s possession of the 52 acres began in 1892.  The Gulleys also assert this in the brief
they submitted to this Court.  Several of
the affidavits that the Gulleys submitted as summary judgment evidence state
that William and Rosia Moore began living on the 52 acres at or near the time
of their marriage.  But these affidavits
were ruled inadmissible by the trial court and we have upheld that ruling in
our discussion of the second issue.  In
other portions of their brief and of the record, such as in response to
interrogatories, the Gulleys asserted adverse possession began “prior to 1899,”
citing the 1909 deed as evidence. 
Whether William and Rosia Moore began living on the League in 1892 or
“before 1899” does not affect our analysis concerning joint possession because
George Moore constructively possessed the land for the Davises since at least
1892.