

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

———————————

No. 07-17-00248-CV

———————————

**RICHARD HOWARD MCDUFF AND SARA SULLIVAN MCDUFF, INDIVIDUALLY AND AS CO-TRUSTEES OF THE MCDUFF TRUST, THE ERIN ELIZABETH MCDUFF TRUST, AND THE MACKIE ANN MCDUFF TRUST, ERIN ELIZABETH MCDUFF, INDIVIDUALLY AND AS CO-TRUSTEE OF THE ERIN ELIZABETH MCDUFF TRUST, AND MACKIE ANN MCDUFF, INDIVIDUALLY AND AS CO-TRUSTEE OF THE MACKIE ANN MCDUFF TRUST, APPELLANTS**

V.

**ANDY BRUMLEY AND SHERI BRUMLEY, APPELLEES**

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 27,103; Honorable Stuart Messer, Presiding by Assignment

August 8, 2022

## DISSENTING OPINION ON REMAND

Before PARKER and DOSS, JJ., and PIRTLE, S.J.

With the greatest respect for my former colleagues, in my humble opinion, the majority opinion in this case perpetuates an injustice foisted upon Appellants by a legal system that has failed them. What I believe actually happened in this case is that Appellants and their out-of-town lawyer got "home-towned" in a complex real property

dispute that was tried as a suit to quiet title, but which the Texas Supreme Court has construed to be a suit in trespass-to-try title—the significance being the trial court's evidentiary rulings left the distinct impression that Appellees were the record title holders. Because I believe our legal system failed Appellants on every level, from the justice of the peace court on up, I passionately, but respectfully dissent.

INTRODUCTION

To understand my opinion in this matter, one must first have a basic grasp of the character and layout of the disputed property and an understanding of the nature and scope of what it might mean to "adversely possess" such a remote piece of property.[1] To  begin with, the disputed property is an oddly-shaped tract of land (property traced in white in the inserted photo) consisting of 345.9 acres, bounded on the south and southwest along the present course of the Pease River, in Wilbarger County, Texas. The disputed property is encompassed entirely *within* property previously deeded to Appellants, Richard Howard McDuff, and his wife, Sara Sullivan McDuff, (property traced in red) by A.M. Hiatt.[2] The disputed property abuts property owned by Appellees, Andy Brumley

 and wife, Sheri Brumley, along its easternmost boundary line. The vegetation covering the

---

[1] My apologies to non-digital format readers who might view these photographs in black and white. In order to show the character of the property and the nature and extent of the alleged adverse possession, this opinion will incorporate numerous trial exhibit photographs because, as they say, "a picture is worth a thousand words."

[2] Although Appellants attempted to offer into evidence proof of their deed to the property, their offer of proof was denied.

disputed property is primarily dense mesquite thicket and scrub brush, with a 30-60 acre wheat pasture encompassed within the interior of the property. The disputed property is completely land-locked and there is no public access to the property, other than along the



Pease River. Along the northern boundary line of the disputed property (towards the McDuffs' property), the Brumleys posted "No Trespassing" signs. No one resides on the disputed property and no permanent improvements or structures have been built on the property save a few deer blinds and deer feeders.

Testimony concerning who actually constructed the deer blinds and feeders is sketchy, with Brumley offering testimony that the blinds were constructed subsequent to his alleged possession, whereas McDuff offered testimony that some of the blinds were there before Brumley claims to have taken possession. McDuff further insisted that some of the blinds may have been left by hunters who had previously leased the property from him for purposes of hunting.

Concerning his "use" of the disputed property, Brumley maintained that he grazed cattle on the property and had placed some "large mining truck tires used as livestock watering troughs." (Despite Brumley's testimony that there has never "been a period of



time, from the time [he] purchased [the disputed property] in 2001 until [the day of trial]," that he has not had cattle on the property, Brumley offered no evidence of

other watering troughs on the property). On the issue of fencing, despite Brumley's testimony that he constructed a five-wire barbed-wire fence all the way around the disputed property, other exhibits and his own personal testimony seemed to contradict that statement.

At the conclusion of the trial on the merits, the trial court submitted to the jury a single issue inquiring whether Appellees held "the Property in peaceable and adverse possession for at least ten years" prior to the date suit was filed. The court provided the jury with definitions of "peaceable possession," "adverse possession," and "claim of right." Following its deliberations, the jury returned a verdict in favor of Appellees. On direct appeal, this court found that a judgment in trespass-to-try title was not supported by the pleadings and was not tried by consent.[3] Accordingly, we reversed the judgment of the trial court and rendered a take-nothing judgment. Upon further appeal, the Texas Supreme Court reversed this court and remanded the matter for further proceedings.[4]

On remand from the Texas Supreme Court, liberally construing the cause of action being asserted as a trespass-to-try-title claim and having reviewed the issues previously pretermitted by this court in our earlier review of the lower court's decision in favor of Appellees, Andy Brumley and Sheri Brumley, I find the evidence to be legally insufficient to support the jury's verdict based on adverse possession. Accordingly, I would reverse the judgment of the trial court and render judgment that the Brumleys take nothing by this suit.

---

[3] *McDuff v. Brumley*, 603 S.W.3d 449 (Tex. App.—Amarillo 2019, pet. granted).

[4] *Brumley v. McDuff*, 616 S.W.3d 826 (Tex. 2021).

4

Appellants are the legal title holders of a larger tract of land that encompasses the disputed tract of 345.9 acres situated along the Pease River, near the City of Vernon, in Wilbarger County, Texas. The Brumleys claim ownership of the disputed tract by virtue of the law pertaining to adverse possession.[5] The issue of whether the Brumleys adversely possessed the McDuffs' property was presented to the jury. The jury found in favor of the Brumleys and the trial court entered judgment vesting title in their favor. By four issues, the McDuffs challenge (1) the legal and factual sufficiency of the evidence supporting the jury's verdict and whether the trial court erred by failing to submit certain questions and instructions to the jury pertaining to (2) "clear and satisfactory" proof, (3) "record title," and (4) "casual fencing and designed enclosures."

The McDuffs purchased the larger tract of property, which included the property in dispute, in July 1984, when they received a general warranty deed from A.M. Hiatt.[6] That deed was recorded in August 1984, and the McDuffs began to reside on the property shortly thereafter. The McDuffs made several improvements to the property, including the construction of a house, fences, and gates.[7] In June 1995, a flood forced the McDuffs to abandon the original residence and establish a new residence elsewhere on the property. Due to some undesirable activity along the Pease River, the McDuffs decided to use the southernmost portion of the property adjacent to the river (described as thick scrub brush

---

[5] The Brumleys originally claimed title by virtue of a special warranty deed from J.A. Coker. Unfortunately, they belatedly recognized that J.A. Coker was a stranger to the actual chain-of-title.

[6] The deed from A.M. Hiatt to the McDuffs conveyed acreage which fully encompassed the 345.9 disputed acres. Neither J.A. Coker, nor the Brumleys have made any claim to those excess acres.

[7] The house was not located on the property in dispute; however, some of the fences and gates were on the disputed property.

and woody thicket) as a buffer between the northern part of the property (where their new home and wheat fields were located) and the river. Years later, the original home was repaired and Erin McDuff Oliver and her husband, Casey Oliver, returned to live there from 2004 until August 2016. During this time period, the McDuff and Oliver families used parts of the disputed tract for family recreational purposes. They had campfires, took the children camping, rode ATVs, and shot firearms on the disputed tract. Some family members hunted, while others gathered wild plums, driftwood, and deer antlers. No one interfered with their use and enjoyment of the property and the tract was always accessible because they had a key to a padlock on the fenced portion of the property. During this time frame, the McDuffs signed an oil and gas lease that included the disputed tract and they also entered into various hunting leases that allowed the lessee to set up hunting blinds on the property. None of these activities were ever challenged.

In March 2000, the Brumleys purchased an adjacent piece of property, referred to as the "Namken Property," that was located generally to the east of the disputed property. In 2001, J.A. "Ricky" Coker approached Andy Brumley about the prospect of purchasing the disputed tract. Ricky claimed that his family held title to the property through his grandfather A.K. Coker, and his father, J.A. Coker. Despite being aware of a land title dispute between the McDuffs and A.K. Coker, Brumley purchased the property without a title examination. On March 5, 2001, Aline Coker, A.K. Coker's widow, filed a special warranty deed transferring her interest, if any, in the disputed property to her son, J.A. Coker. Two minutes later, J.A. Coker and his wife, Beth, filed a special warranty deed transferring their interests, if any, in the disputed property to Andy and Sheri Brumley. Both deeds were dated February 27, 2001.

6

Apparently aware of questions concerning the validity of his title, shortly after the filing of the special warranty deeds, Andy Brumley went to see Richard McDuff about the disputed tract. Because Brumley did not tell McDuff that he had already purchased the property, McDuff advised him that he was making a mistake *if he went through with the purchase* because the Cokers did not have any interest in the disputed property to sell. Brumley left and, despite several subsequent social or business contacts, the two never discussed the matter again until this litigation was filed.

In August or September 2001, an incident occurred when McDuff sent an employee to clear brush for purposes of building a road and fence on the disputed property. Work stopped when Brumley's son, Cody, instructed the man to leave the property. Afterwards, the Brumley's attorney sent McDuff a trespass warning by certified mail. He also sent a demand letter for the payment of damages suffered as a result of McDuff's alleged trespass. McDuff consulted an attorney and made a physical inspection of the disputed property. Finding no use, occupation, or activity on the property and because the letter contained inaccuracies about the history of the disputed property and its ownership, McDuff chose to ignore it. Instead, the McDuffs discontinued any efforts to clear the land and the Brumleys never followed up on the threats of suit they made. From 2004 until sometime in 2014 or 2015, the McDuffs cash-leased the property to a third party who either farmed the adjacent wheat fields or grazed cattle on the pasture lands.[8] As a result, the McDuffs sporadically inspected the property and denied actual notice of any unauthorized activity on the disputed property until sometime in 2014.

---

[8] Dean Gfeeler testified that he did not graze cattle on the disputed tract and that he would contact the Brumleys for "permission" to retrieve his cattle whenever they strayed onto the disputed property.

As to the Brumleys' use and occupancy of the disputed tract, from sometime in 2001 until 2014 (the dates of which were not established by the evidence) they erected "no trespassing" signs, rebuilt existing fences, and added new interior "cross-fencing." In addition, for undisclosed periods of time, they hunted on the property, graded roads, and used old tires to make water troughs for cattle. During that same unspecified time frame, the McDuffs also hunted on the property, while repairing and maintaining sections of the fencing. At no time did the Brumleys erect any permanent improvements on the property (save a few semi-permanent deer blinds) and no one ever resided on the disputed property. The Brumleys also grazed livestock on the disputed tract; however, no evidence was ever presented as to the number of head of cattle grazed or the grazing capacity of the 345.9 acres.[9]

On July 11, 2014, the Brumleys brought suit to "quiet title," claiming they had held the disputed property in adverse possession for more than ten years. In their petition, they contended they came into possession in February 2001, by virtue of the special warranty deed from J.A. Coker and his wife, Beth Coker. The Brumleys did not contend, as they could not, that their title could be traced back to the sovereignty of the soil. Clinging to their claim of title by virtue of the Coker special warranty deed, the Brumleys alternatively claimed title by adverse possession. In response, the McDuffs' position at trial was that J.A. Coker and Beth Coker never owned title to the disputed property, that they were naked trespassers, and that the special warranty deed did not pass legal title to the property in controversy to them. The McDuffs further contended that the Brumleys'

_____

[9] In a pretrial hearing, Brumley's counsel advised the trial court that the Brumleys were not claiming adverse possession on the basis of grazing cattle.

"cultivation, use, and enjoyment" of the disputed property never rose to a level sufficient to raise an inquiry or cause the commencement of limitations, more than ten years prior to the filing of this suit.

The McDuffs' second, third, and fourth issues generally complain about the trial court's instructions to the jury, contending that in this complicated area of law pertaining to adverse possession, where courts are charged with seeing that the elements of adverse possession are "strictly complied" with and juries are required to make certain that there is "clear and satisfactory" proof of unfamiliar concepts like "casual fencing" and "designed enclosures," the trial court's instructions could have been more elucidating. While I certainly agree the jury could have received clearer direction, I conclude that our disposition of issue one, pertaining to the pivotal question of adverse possession, is dispositive.

### ADVERSE POSSESSION

If an action for the recovery of real property is barred under chapter 16 of the Texas Civil Practice and Remedies Code (i.e., recovery is barred based on the affirmative defense of the statute of limitations), the party holding the disputed property in peaceable and adverse possession is deemed to have full title, precluding all claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.030(a).[10] The applicable statute of limitations and whether an action for the recovery of real property is barred by that statute depends on the facts and circumstances of each individual case. *See* §§ 16.021-.037; *Wells v. Johnson*, 443 S.W.3d 479, 489 (Tex. App.—Amarillo 2014, pet. denied). Under the doctrine of adverse

---

[10] All further references to "§" or "section" are to the Texas Civil Practice and Remedies Code unless otherwise designated.

possession, in the context of a dispute concerning possession of real property, the rightful owner of the property must institute suit for recovery within a specified period of time (three, five, ten, or twenty-five years depending on various statutory factors and conditions) or subsequently be barred from recovery or possession. Therefore, "[t]he concept of adverse possession allows a person to *claim* title to real property presently vested in another." *Session v. Woods*, 206 S.W.3d 772, 777 (Tex. App.—Texarkana 2006, pet. denied) (emphasis in original).

Due to the harsh nature of disenfranchising someone of title to real property otherwise rightfully held, establishing title by adverse possession is not well-regarded in the law, and the statutory prerequisites must be *strictly complied* with. *Thomas v. Southwestern Settlement & Development Co.*, 131 S.W.2d 31, 34 (Tex. App.—Beaumont 1939, writ dism'd judgm't cor.). Therefore, "[o]ne seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 286, 267 S.W.2d 781, 787 (1954) (holding that adverse claimant has the burden to prove every fact necessary to that claim by "clear and satisfactory" evidence). Thus, the burden of proving each essential element is on the party claiming title by adverse possession. *Fuentes v. Garcia*, 696 S.W.2d 482, 484 (Tex. App.—San Antonio 1985, no writ) (citing *Davis v. Carriker*, 536 S.W.2d 246, 251 (Tex. App.—Amarillo 1976, writ ref'd n.r.e.)). *See Moore v. Stone*, 255 S.W.3d 284, 288 (Tex. App.—Waco 2008, pet. denied).

Under Texas law, in addition to the statutory requirements of "cultivation, use, and enjoyment" for the requisite period of time, courts have interpreted every claim of adverse

10

possession as encompassing at least six essential elements: (1) visible appropriation and possession of the disputed property; (2) that is open and notorious; (3) that is peaceable; (4) under a claim of right; (5) that is adverse and hostile to the claim of the owner; and (6) consistent and continuous for the duration of the statutory period. *Glover v. Union Pac. R.R.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006, pet. denied). *See* § 16.021(1). It has also been said that adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011) (quoting § 16.021(1)).

### (1) CULTIVATION, USE, AND ENJOYMENT

For more than 100 years, this court has held that a party claiming peaceable and adverse possession of disputed property must establish by competent evidence the cultivation, use, and enjoyment of the same. *Wichita Valley Railway Co. v. Somerville*, 179 S.W. 671 (Tex. App.—Amarillo 1915, no writ). In fact, the three statutory verbs describing the requisite possession are "cultivation, use, and enjoyment." Physical occupancy is not a requirement. Accordingly, when it comes to rural property not physically occupied by the claimant, in a trespass-to-try title cause of action, it is not necessary for the party alleging same to show actual personal occupancy of the land so long as the cultivation, use, and enjoyment of the property is of such a nature as would place a reasonable landowner on notice that someone is claiming an adverse ownership interest in the property. It is not enough to show some transitory or temporary use and enjoyment of the property, but the use and enjoyment must be of such a character as to evidence a visible, adverse, and hostile claim of ownership. Furthermore, the adverse

11

and hostile cultivation, use, and enjoyment of the property must be shown to be continuous and uninterrupted for the entire period of limitations.

### (2) VISIBLE APPROPRIATION AND POSSESSION

Under Texas law, adverse possession requires "an actual and visible appropriation of real property commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." § 16.021(1). Therefore, to satisfy the elements of an adverse possession claim, the claim of the adverse claimant must be readily apparent to, inconsistent with, and hostile to the claim of the rightful title holder. *BP Am. Prod. Co.,* 342 S.W.3d at 69-70. To claim property through adverse possession, "the possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *Rick v. Grubbs,* 147 Tex. 267, 214 S.W.2d 925, 927 (1948) (emphasis in original). In determining what constitutes an "unmistakable" claim of exclusive ownership, courts have given significant consideration to the nature of the land and its usual and customary uses. *Wells*, 443 S.W.3d at 489 (occasional grazing of river-bottom land used for sorting of cattle insufficient to establish claim of exclusive ownership); *Wall v. Carrell*, 894 S.W.2d 788, 801 (Tex. App.—Tyler 1994, writ denied) (mere fencing and occasional removal of timber insufficient to establish visible appropriation of an otherwise unoccupied 31.4-acre strip of wooded land). Accordingly, when a party relies on a naked claim of possession (without physically occupying the land or prohibiting all other occupancy or use by fencing or other exclusionary means), the nature of the occupancy or possession "must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery." *Rhodes*, 802 S.W.2d at 645 (neither isolated incidents of

12

selling cedar timber nor clearing of cedar trees for purposes of seasonal grazing of cattle or goats was sufficient to *unmistakably* establish adverse possession claim of 15.332 acres of cedar timberland).

### (3) OPEN AND NOTORIOUS

Furthermore, possession by the adverse claimant must be "open and notorious." Open and notorious possession carries with it an indicium of ownership and, in that sense, operates as notice to the true owner that title to his property is being claimed by the party who is openly using or profiting from the disputed property. *Felts v. Whitaker,* 129 S.W.2d 682, 687 (Tex. App.—Fort Worth 1939), *aff'd*, 137 Tex. 578, 155 S.W.2d 604 (Tex. 1941). In that regard, the nature of the possession must be *so obvious as to afford grounds for a presumption of knowledge or notice*, and it must be sufficiently "open, exclusive and visible" as to excite an inquiry, for the term of the limitations period. *Id.* at 688. The degree of use must be sufficient to raise an inquiry and that degree of use will depend on the nature and character of the property, as well as the nature and extent of the claimant's claim of right to that property.

### (4) PEACEABLE

A fourth requirement of adverse possession is "peaceable possession," defined as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." § 16.021(3). An "adverse suit to recover the property" would include both a forcible detainer action filed in justice court, as well as a trespass-to-try title action filed in district court. *Valdez v. Moerbe*, No. 03-14-00731-CV, 2016 Tex. App. LEXIS 3504, at *23 (Tex. App.—Austin April 6, 2016, pet. denied) (mem. op.).

**(5) UNDER A CLAIM OF RIGHT**

As contemplated under the doctrine of adverse possession, a "claim of right" is a claim made by the party in possession, of the intent to claim the land in question as owner, and not in recognition of or in subordinate to the record title owner. *Wells*, 443 S.W.3d at 489; *Sisson v. Koelle*, 10 Wash. App. 746, 520 P.2d 1380, 1384 (1974). In order to satisfy the elements of an adverse possession claim, the claim of the adverse claimant must be of such a character as to indicate unmistakably an assertion of exclusive ownership in the occupant. *Wells*, 443 S.W.3d at 489.

**(6) ADVERSE AND HOSTILE TO TRUE OWNER**

Possession of property under a claim of adverse possession must be "actual and visible appropriation" and use of the disputed property. Whenever a disputed tract of land is casually or incidentally occupied, any accompanying recreational use such as camping or hunting, or the occasional grazing of livestock will <u>not</u> amount to such adverse and hostile possession as will support a claim of title by adverse possession. *Orsborn*, 267 S.W.2d at 785.

**(7) CONSISTENT AND CONTINUOUS FOR THE DURATION OF THE STATUTORY PERIOD**

The seventh essential element of an adverse possession claim is that the acts constituting the adverse possession must be consistent and continuous for the duration of the statutory period. *Wells*, 443 S.W.3d at 489. The acts constituting adverse possession must be uninterrupted by temporary vacancy, unless the duration of the vacancy is reasonable under the existing circumstances which reasonably shows the adverse claimant did not thereby intend to abandon the premises. *Dunn v. Taylor*, 102 Tex. 80, 113 S.W. 265, 267 (1908) (holding that "[i]t was incumbent on [the adverse

14

claimant] to show the facts from which the conclusion of continuity may be deduced affirmatively").  The evidence must show that the nature of the possession was sufficient to indicate continued dominion over the disputed property.

### SECTION 16.026—TEN-YEAR LIMITATIONS PERIOD

Section 16.026(a) provides that "[a] person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property."  § 16.026(a).  Under this section, when a claimant relies on grazing to establish his adverse possession, he must present evidence that he "designedly enclosed" the disputed property. *McDonnold v. Weinacht*, 465 S.W.2d 136, 141-42 (Tex. 1971) (citing *Orsborn*, 267 S.W.2d at 785); *Wells,* 443 S.W.3d at 489-90; *Perkins v. McGehee*, 133 S.W.3d 287, 292 (Tex. App.—Fort Worth 2004, no pet.).  "If the fence existed before the claimant took possession of the land and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a 'casual fence.'  Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not change a casual fence into a designed enclosure."  *Rhodes*, 802 S.W.2d at 646 (citations omitted).  An exception to the designed enclosure requirement exists if the adverse claimant can establish sufficient visible non-grazing appropriation of the land such that the true owner would have notice of the hostile claim.  *Trevino v. Trevino*, 64 S.W.3d 166, 172 (Tex. App.—San Antonio 2001, no pet.).

### ANALYSIS

The legal theory pursued by the Brumleys in this case was not the model of clarity.  Couched in the terms of a *suit to quiet title*, they steadfastly maintained that they held

15

superior title by virtue of the special warranty deed they received from J.A. Coker and wife, Beth Coker. In fact, when Andy was asked if he was trying to "take" the disputed property by way of a claim of ownership that was adverse and hostile to the claim of the McDuffs, he stated that "[i]t was never my intention to take land from anyone. That's why I paid for it." During the prosecution of the case-in-chief, however, the first two exhibits introduced by the Brumleys were the two "Coker" deeds constituting their entire chain of title. Circumstantially, Andy also admitted that he was aware of the ownership dispute between the McDuffs and the Cokers at the time he agreed to take a special warranty deed, without a title examination or title insurance. This raises a question as to whether the Brumleys were claiming the property *adverse* to the McDuffs or whether they recognized their superior title.

Despite this emphasis on the deeds, the Brumleys' counsel announced to the court and argued before the jury that the Brumleys were not claiming title through their deed. Their counsel even stipulated that the McDuffs were the rightful title holders of the property yet opposed introduction of evidence that would have established the conveyance of the larger encompassing tract from A.M. Hiatt to the McDuffs. As tried by the parties and as submitted to the jury by the court, the Brumleys' claim of ownership to the disputed property was based solely on their claim of adverse possession. Furthermore, in the final analysis, the Brumleys' adverse possession claim was not based on physical occupancy or possession of the land but instead on weak or inconsequential evidence of occasional hunting and related activities.

Counsel for the Brumleys specifically announced to the court that the Brumleys' claim was not based on grazing cattle. Nor was it based on the construction of any

16

permanent improvements. Although testimony was provided about the construction of deer blinds, other testimony suggested that both the Brumleys and the McDuffs allowed others to hunt on the disputed property and that occasionally they would leave or abandon the deer blinds. The Brumleys also offered testimony concerning the placement of large tires on the disputed property for the watering of wildlife and the growing of crops for the feeding of wildlife.

By their first issue, the McDuffs contend the jury's finding of adverse possession is unsupported by legally or factually sufficient evidence. When a party attacks the legal sufficiency of an adverse finding on an issue that the opposing party had the burden to prove at trial, we will sustain that challenge if (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact. *Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 57-58 (Tex. 2015) (per curiam). In our review, we must credit favorable evidence if a reasonable fact finder could do so and disregard contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Furthermore, we consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *Id.* at 822.

As stated before, the doctrine of adverse possession is based on the statutes of limitation for the recovery of real property. *See* §§ 16.021-.037. *See also Wells*, 443 S.W.3d at 488. Thus, in the context of a dispute concerning possession of real property, the rightful owner of the property must institute suit within a specified period of time (three,

five, ten, or twenty-five years depending on various statutory factors and conditions) or subsequently be barred from recovery. The relevant statutory period of time (in this case ten years) commences once a cause of action for possession by the rightful property owner accrues.

The Brumleys have failed to establish by "clear and satisfactory" proof any visible non-grazing appropriation of the land of such a character that it would cause the true owners, the McDuffs, to have notice of a hostile claim. At best, the McDuffs might be aware of persons occasionally using the property for recreational purposes; however, because this use would not be inconsistent with the purposes for which the McDuffs had leased the property, such incidental usage would not rise to the level of putting them on notice of an adverse possession claim. Furthermore, such use would not rise to the level of "consistent and continuous" possession. Nothing about a graded dirt road, a used-tire water trough, or repaired or replaced fencing was of such a character as to put the McDuffs on notice that someone was making a hostile claim of ownership to the entire 345.9 acres.

Here, the Brumleys failed to establish any cultivation, use, or enjoyment of the disputed property of such a character that it would raise a sufficient inquiry that they were "visibly appropriating" the entire 345.9 acres or that their claim was either "hostile" or "open and notorious." Nothing about their occasional use of the property for hunting rises to the level of putting the McDuffs on notice of an adverse claim of legal ownership. *See King Ranch*, *Inc. v. Garcia*, No. 04-13-00605-CV, 2014 Tex. App. LEXIS 8522, at *14 (Tex. App.—San Antonio Aug. 6, 2014, pet. denied) (mem. op.) (finding evidence that claimant had family gatherings on the property, grazed cattle, hunted and occasionally

grew crops was insufficient to establish actual visible appropriation where fences existed before the claimant took possession); *Moore*, 255 S.W.3d at 289 (holding no adverse possession of property enclosed by casual fence where only use was grazing, cutting hay, and sporadic cultivation); *Harlow v. Giles*, 132 S.W.3d 641, 648 (Tex. App.—Eastland 2004, pet. denied) (finding use of property for grazing of livestock and occasional hunting, including the construction of deer blinds and deer feeders, was insufficient to establish adverse possession where claimant failed to establish a "designed enclosure").

In this case, the disputed property consists of 345.9 acres of unimproved land. Portions of the property were covered by "thick scrub brush and woody thicket," whereas other portions of the property (30-60 acres) were described as pastureland suitable for the grazing of livestock. Testimony established that, prior to any claim being asserted by the Brumleys, the disputed property was partially enclosed by existing fences and partially enclosed by fences that were "occasionally washed out by the river." The Brumleys offered testimony that they repaired or replaced much of that original fence. They did not establish by clear and convincing proof that the property in question was "designedly enclosed." As a result, the fences in question were, as a matter of law, "casual fences." The Brumleys' activities on the disputed property consisted of the occasional repair or maintenance of these casual fences, the grazing of livestock, occasional hunting activities, and the construction of minor improvements. The record is silent as to the dates, duration, and intensity of these activities and amounts to nothing more than a scintilla of evidence regarding the character of their "possession." As such, the Brumleys failed to offer sufficient evidence that their possession of the disputed property amounted

to (1) "visible appropriation" of the entire 345.9 acres that was both (2) "open and notorious," as well as (3) "adverse and hostile" to the claim of the McDuffs, for a (4) "consistent and continuous" duration of the statutory period of ten years. As such, I find the evidence is legally insufficient and the judgment entered in favor of the Brumleys cannot legally stand. Accordingly, I would sustain issue one. In light of the disposition of issue one, I would pretermit the disposition of issues two, three, and four. *See* TEX. R. APP. P. 47.1 (written opinion of appellate court need not address issues which are unnecessary to final disposition of the appeal).

### CONCLUSION

Because I would sustain issue one, I dissent. I find the judgment of the trial court should be reversed and judgment rendered denying all relief requested.


Patrick A. Pirtle
Senior Justice